## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**Plaintiffs**
**Mery Castillo on behalf of Yanni Castillo**                >
**Abbreviations are M.C. and Y.C.**                          >
**12274 NW 13ᵀᴴ CT**                                         >
**Pembroke Pines Fl, 33026**                                 >
**(954) 432-1956**                                           >
                                                             >
**v.**                                                       >
                                                             >Case No. <u>15-60418-CIV-DIMITROULEAS</u>
**Defendants**                                               >
                                                             >   *FIRST AMENDED COMPLAINT*
***THE SCHOOL BOARD OF BROWARD***                            >   *FOR DAMAGES*
***COUNTY,  FLORIDA, and ROBERT W. RUNCIE***>
**Superintendent,**                                          >
**600 S.E. Third Avenue**                                    >
**Fort Lauderdale Florida, 33301**                           >   (DEMANDED FOR JURY TRIAL)

### <u>COMPLAINT</u>

1.  The plaintiff, <u>Mery Castillo</u>, sues defendant, <u>The School Board of Broward County</u>
    <u>Florida and Superintendent Robert W. Runcie</u> for for damages done unto the plaintiff for
    negligence, harassment, discrimination and bullying during Y.C.'s time in the Broward
    Education System and not receiving the proper education he so rightfully deserves. The
    defendants are at fault for this.  The plaintiffs exhausted all remedies known to the
    plaintiffs in order to salvage the situation, and currently Y.C. has no GED, no high school
    diploma and a future that looks very uncertain in deed.
2.  The sue is for damages incurred emotionally for all the bullying, harassment,
    discrimination he received in the later years once the negligence was discovered in his
    early years of childhood development. **Teachers falsified grades and test scores in**
    **order to mask his learning difficulties and pass him through the educational system.**
    This would allow him to continue without addressing his true learning difficulties and
    now Y.C. never wants to set foot in an education system again, for all the emotional
    psychological abuse he has received after all these years in the education system.  The
    future for him looks very uncertain and it is for this reason we are suing the defendants
    for all damages in order to remedy the situation properly, have the education system
    address the falsification of documents, grades and test scores and, help Y.C. to have a
    future.



1

## JURISDICTION AND VENUE

3. Jurisdiction over Plaintiffs' federal law claims is founded upon 28 U.S.C. 1331 [federal question jurisdiction] and 28 U.S.C. 1343(a)(3)[federal civil rights jurisdiction]. All claims for violation of Plaintiffs' rights under the laws and the constitution of the United States are brought pursuant to 42 U.S.C. 1983.

## PARTIES

4. The Plaintiff Mery Castillo, resident of Broward County, Florida and is mother of Y.C., age 19, who has a learning disability and other health impairment. She has not had a pleasant and normal fulfilling life because she has had to always focus on her son and figure out what was going on to her son in the educational system. She has suffered as a mother attempting at all costs to try and save her son from what has already occurred in the educational systems of Broward schools.

5. The Plaintiff Y.C. was diagnosed with a *learning disability and other health impairment (ADHD)* as defined by state and federal law at the age of 17. Y.C. was left behind by the school district and has a language level of second grader, 10 years below. The Plaintiff Y.C. was victim to the bullying harassment and discrimination for his academic capability caused by all the defendants. As a result, he has been emotionally/psychologically abused and never wants to be instructed by any professional teacher ever again. He has been damaged so severely that any attempt to try and salvage his future with anything in regards to an education seems almost impossible to do.

6. Defendant, Robert W. Runcie, is the superintendent of Broward County Schools and as such is responsible for the administration of educational services in Broward County as well as the duty to see that principals and teachers under his supervision provide handicapped students with a FAPE as required by state and federal law.

## STATEMENT OF FACTS

7. Y.C. was intentionally bullied, harassed, neglected and discriminated against from the Broward School District for 12 years. The School system was aware that Y.C. had problems from teachers and school staff and observed without taking any action. There is sufficient evidence of pervasive and severe harassment that Y.C. received which "created" an abusive educational environment during his school years.

8. From the years of 2000 – 2010, Y.C. was enrolled at Pembroke Pines Charter Elementary School East Campus, Pembroke Pines Charter Middle School Central Campus and Pembroke Pines Charter High School for grades K - 9.

9. From 2001-2011 took 10 years in intensive reading classes and received from 2005 – 2011, 7 years of either a level 1 or 2 on the FCAT.

10. He went to Charles W. Flanagan for grades 10, 11 and part of 12 grades for the school years of 2010 - 2013. During that time, from July 2nd 2012 - August 1st 2012, Y.C. was enrolled in the Cooper City Adult Education courses to make up a ½ credit in English I in the 11th grade. At Cooper City Adult Education courses, he never received accommodations only until Legal Aid Ms. Marcus forced Ms. Arlene Schwartz to give him his accommodations.

11. Y.C. withdrew from Charles W. Flanagan 3 months prior to receiving his high school diploma on March 14th, 2013 because the abuse had become too severe. In fact, he was so disturbed that he decided to run away from school and said that he was never going to back again ever in his life.

12. All evidence of all incidents of bullying, harassment, discrimination and negligence can be found in all communications between the Plaintiff and the Defendants, as well as all records regarding Y.C.

13. All evidence can be found in emails, school data, virtual counselor print outs, FCAT Scores, Benchmark Assessment Test Scores, Standardized test results, academic related medical records, behavior assessments, 8 academic evaluations, school disciplinary records, notes from teachers, therapist visits outside of school, Y.C.'s progress monitor plan and pinnacle grade reports. Help from Legal Aid services of Broward County, Transition services from Vocational Rehabilitation were included in the IEP, School Choice, McKay Scholarship and Step Up for Students and Florida Statues Violations.

14. Attempts at transition service from Vocational Rehabilitation included in the IEP were deemed unsuccessful by the plaintiff's Y.C. and M.C.

15. School Choice, McKay Scholarship and Step Up for Students were attempted by the plaintiffs Y.C. and M.C but were also deemed unsuccessful.

## PEMBROKE PINES CHARTER ELEMENTARY AND MIDDLE SCHOOL

### EARLY INTERVENTION VIOLAITONS

16. Early Interventions services not provided violating the Individual with Disabilities Education Act (IDEA) Early intervention services laws:  34 C.F.R. 300.226 and 300.646(b)(2) .

17. When Y.C. started in Kindergarten he had trouble learning the alphabet. After that, he always struggled to get good grades. (Ms. Ollet)

18. During this time, Y.C. was not allowed to take physical education because he always had to take an extra intensive reading class. It was an attempt to remedy his below average reading. This went on from 2001 to 2011, yet Y.C. didn't make any progress.

## CHILD FIND VIOLATIONS

19. From 2001 to 2011, Y.C. didn't pass any Benchmark Test. And, from 2005 to 2011 Y.C.'s FCAT reading scores were either **1** or **2** due to his reading deficiencies for a total of **7 consecutive years**. In addition, in math he also scored 1 or 2. Due to this grades and incidents, it was very obvious that Y.C. had major problems. My husband and I were not offered any type of help or special services which he qualified for. He in fact qualified during his elementary and middle and his high school years from 2000 – 2011.

20. Child Find Obligation C.F.R. 34.300.111 Section 612 (a)(3)(A) of the Act authority 20 U.S.C. 1401 (3) 1412 (a)(3). Require that all children with disabilities in the state who are in need of special education and related services be identified, located and evaluated.

## UNJUST DISCRIMINATORY DISCIPLINE
### Y.C.'S PETTY THEFT

21. In October of 2009 we spoke to the assistant principal Ms. Debra Tabie about the incident. Y.C. began to get even more detentions and suspensions. On November 2nd, 2009 Y.C. was in the Cafeteria and left the cashier heading to his table for lunch. He accidentally forgot to pay a little bite size rice crispy. Mrs. Buonomo was next to the cashier and stopped him. She didn't believe him that it was an accident. So, Y.C. got a charge of petty theft and a 3 day suspension. In the state of Florida, the laws dictate that petty theft of the second degree of authority under the $100.00 is only considered theft when there is an **intention** to steal. There was no intention to steal on Y.C.'s behalf. However, Y.C. then had to miss more school days, which put him back even more for school.

### DISCRIMINATORY DETENTIONS AND SUSPENSIONS

22. In 2009-2010 Y.C. received 30 detentions, 15 days of suspension and did not pass any class for the entire year. This was his freshman year at Pembroke Pines Charter High School.

|                       |         |
|-----------------------|---------|
| 11/02/09 – 11/05/09   | 3 days  |
| 11/09/09 - 11/23/09   | 10 days |
| 12/17/09 –12/18/09    | 2 days  |

Suspensions          15 days

From November-December 2009 Y.C. was two months out of school, the persons who signed this was Debra Tabie., Assistant Principal and Peter Bayer, Principal.

## VIOLATIONS

23. Discriminatory Administration of discipline for Charter High School (34. C.F.R. 300.530, 300.534, 300.536, 34 C.F.R. 300.29)

24. Section 504 of Rehabilitation Act of 1973 and Title II of the American with Disabilities Act 1990

- Violation of the title VI of the Civil Rights Act 1964
- Violation of the Constitutional Rights 42 U.S.C. 1983
- Child Find Violation

25. Y.C. failed 9th grade. He received all F's in all of his classes for the entire year.

## PEBROKE PINES CHARTER HIGH SCHOOL

### EVALUATION REQUEST DENIED

26. In the first quarter of Y.C.'s school year at Pembroke Pines Charter High School, M.C. noticed Y.C. was struggling requested an initial evaluation for Y.C., but was denied.

27. In October 2009 we requested to Pembroke Pines Charter High School to receive an evaluation for Y.C.. The administration then denied the evaluation request and never gave us a written explanation as to the reasons why they made that decision. (Violation of 34 C.F.R 300.503 (b) and Section 612 (a)(3) of the Act. Melody Musgrove Ed. D Director of Special Education Program). Refresh the School Administrator to avoid using the R.T.I to delay or deny a timely initial evaluation for children suspected of having a disability Regulations 34 C.F.R. 300.301 (b)34 C.F.R. 300.304. 300.311.

## DATA THE SCHOOL DID NOT USE PROPERLY

28. The District and charter schools failed to use the school wide data to fully adhere to their Child Find Duties, Laws and Obligations , FCAT scores, Benchmark Assessment Test Scores, Progress Monitor Plans, Assessment Reports, Florida Oral Reading Fluency (FAIR)(FORF), DAR results, benchmark to effectively located on Virtual Counselor.

29. 1008.22 of the Florida Statutes states that ,"The Primary Purpose of the student assessment program is to provide student academic achievement and learning gains data to students, parents, teachers, school administrators and school district staff. This data is to be used by districts to improve instruction; by students, parents, and teachers to guide learning objectives; by education researchers to asses national and international education comparison data; and by the public to assess the cost benefit of the expenditures of taxpayer dollars."

30. 1008.25 of the Florida Statutes States that INTENT. – It is the intent of the Legislature that each student's progression from one grade to another be determined, in part, upon satisfactory performance in reading, writing, science, and mathematics; that district school board policies facilitate student achievement; that each student and his or her parent be infoirmment of that student academiuc progress."

## DR. SILVERMAN'S RECOMMENDATIONS

31. Dr. Silverman recomnmended and emphasized that Y.C. nees immediate interventions in the areas of reading and fluency by a professional one on one therapy and counseling. In addition, he needs math skills such as those taught in middle school and needs 100% extended time for classroom assignments and tests. Failure to nto address his needs based on the recommendations given by Dr. Silverman could result in being at risk for additional learning, attention,k behavioral and emotional struggles . This of course was

reported by Dr. Silverman himself in the evaluation provided to Charles W. Flanagan High School.

32. As soon as we find out about Dr. Silverman and Y.C.'s Pediatrician Dr. Robert T. Gonzalez MD FAAP, PA recommended we look for a therapist called Dr. Arturo CID LCSN, BCD for additional treatment.  We contacted Dr. Arturo CID in August of 2010 and started to have Y.C. see him during his time at Charles W. Flanagan High School.

## CHARLES W. FLANAGAN HIGH SCHOOL
## DISCRIMINATORY EVALUATION

33. Janua. Review of Records and Private Report

   Interviews

   Classroom Observation

   Conner's 3-Teacher and Self Report Forms

   Kaufman Test of Educational Achievement – Second Edition (KTEA-II)

   Sentence Completion Test

34. Y.C. was evaluated November 16, 2010.  We received the psychological report from Dr. Kurt Wasser December 6, 2010.  According to the doctor, Y.C.'s updated reading achievement was within average range.  He was demonstrating progress in reading fluency.  Moreover, he was not considered eligible for a specific learning disability and language impediment.

35. Each state must ensure that FAPE is available to any child with disability who needs special education and related services even thought the child has not failed or been retained in a course and is advancing from grade to grade.  34C.F.R 300.101 ©

36. January 7, 2011 we received a data analysis work sheet to determine Y.C.'s eligibility for Specific Learning Disability.  After the analysis, they determined that he did not qualify.  However, he did qualify due to all the data we have presented up to this time and they deliberately neglected to mention that.

37. The December 20th, 2013 United States Department of Education Office of Special Education and Rehabilitative Services Memorandum states that:

38. Under 34 CFR 300.307, a State must adopt, consistent with 34 CFR 300. 309, criteria for determining whether a child has an SLD as defined in 34 CFR 300.8(c)(10). "No assessment in isolation is sufficient to indicate that a child has an SLD including reading

fluency in the list of areas to be considered when determining whether a child has an SLD."

**THE 504 PLAN WAS DENIED BY CHARLES W. FLANAGAN HIGH SCHOOL**

39. On February 24, 2011 in a letter, we gave the assistant principal Vivian Suarez a request for a section 504 plan accommodation. By March 8, we receive a letter for a meeting for 504 ADA to meet at March 29, 2011 at 7:30 AM and review Y.C.'s Records.

40. On March 29, 2011 we gave a 2 page letter of Y.C.'s Portrait and diagnosed of ADHD. The team meeting integrated of School Psychologist Kurt Wasser , Guidance counselor Ovida Ross and Guadalupe Prieto, School Social Worker Linda Friedman and Vivian Suarez who signed but was not present. The team determined that Y.C. was not eligible for accommodations under section 504. S The reasons were that Y.C. doesn't have any problem in academic social behavior according to the teachers, And that the student does not exhibit a substantial limitation in one or more major life activities.

41. It was a violation of Section 504 of the Rehabilitation Act of 1973 29 U.S.C 794. Title II of the Americans with Disabilities Act of 1990 (ADA)

**42. Y.C RECEIVED NO ENGLISH CLASSES IN THE 10TH GRADE AFTER FAILING ALL OF 9TH GRADE**

43. Y.C. didn't receive any English classes in 10th grade. Even though he failed English I in 9th grade in charter High School. Consequently, we enrolled him in English I Virtual Class. He was only able to finish half of class. It was clear that his other classes were going ot suffer more because he didn't have any accommodations to support the workload.

44. The Common Core State Standards Articulate rigorous grade-level expectations in the areas of mathematics and English language arts. The standards identify the knowledge and skills students need in order to be successful in college and careers. F.S. 1003.41 Sunshine State Standards.

**LEGAL AID BROWARD COUNTY JULY !, 2011**

45. After all those years that we tried to get a proper education for our son we found ourselves very frustrated. Therefore, we decided to get legal presentation outside the school . We found legal aid of Broward County, INC. This organization which is funded

by federal state and local governments; the Florida bar, local bar association and special grants.

46. On July 1st 2011, Mrs. Rochelle Marcus attorney in education law took our case. The first thing Ms. Marcus did was to have Y.C. be evaluated in the areas of speech, language and psychological evaluation.   Y.C. was evaluated at "Kids Spot" speech physical occupational therapy on July 1st, 2011 by Danielle Monterrey M.S'CF SLF+P. Once again he showed the same major concerns: Reading comprehension, expressive and receptive language. Mrs. Marcus also sent us to obtain an independent psychological evaluation from Nova Southeastern University.

**VIOLATION OF SCHOOL BOARD POLICY 6306**

47. The School Board Policy 6306 Homework goals are that every teacher maintain a website and all homework assignments be listed, so students and parents can monitor student's progress and weaknesses.

**ABUSE OF POWER: INCIDENT WITH CLASS ASSIGNMENT**

48. My husband and I were very dissatifised with Ms. Sturrup Leona's abuse o fpower.  An incident occurred withy.C. where he had a group class assignment regarding anaologies and each student had to turn his or her own worksheet.

49. Y.C. didn't have any incorrect answers on his own personal worksheet and was later accused by Ms. Sturrup to have been cheating.  When Y.C. asked why she thought that, she replied, "Not even my brightest students got all the questions right." Y.C. asked her, "What are you trying to say?" The she said " I have known you for weeks, I know your reading levels and I know your capabilities. You didn't get this all right."

50. She then made him take another test that was much harder where he scored a C instead of the A he so deserved.   Then she assumed that Y.C. was cheating on this one as well… We spent a lot of time and money to get Y.C. therapies to raise his self esteem.

**NOVA'S EVLATUIONA ND ITS RECOMMENDATIONS WER NOT FOLLOWED**

51. On December 19, 2011, we reeived the results of the psycho educational evaluation performed by Yaslaine Jimenez MS and supervised by Dr. Ralph E Cash P.H.D. NCSP Licensed Psychologist. Once again Y.C. had trouble in the same areas.  In fact, the test in the area of Oral language he scored as an average individual of 8 years, 7 months of age. In the oral expression, he scored as an individual who was of 10 years, 9 months old.  In

listening comprehension involving attention to communication and verbal comprehension Y.C.'s cluster, score was 79.   This is the average of a 9 years, 7 months old student. Thus, tasks that measure listening and oral comprehension above a 12 year age equivalent will most likely prove to be very difficult for him.

52. Dr. Ralph E. Cash, Ph. D. recommendations were that he should receive intensive language training in English to help him with his oral expression and comprehension for the English language.   He also stated that Y.C. would need 75- 100% additional time depending on the reading demands of the assignment.

## FLANAGAN SENT US Y.C.'S NEW AND INAPPROPRIATE SCHEDULE ON JANUARY 2ND, 2012

53. On January 2, 2012 Flanagan sent us the new schedule for his classes and teacher for the year 2011-2012.  In this time, they chose English 3 without our approval or decision. They chose English 3, even though he didn't finish English I or even begin or finish English II.

### ALTERATION OF STUDENT GRADES

54. On January 20th, 2012 I emailed Mrs. Marcus (Legal Aid) because based on the previous behaviors from dealing with Charles W. Flanagan, I thought that some teachers may alter the grades before the IEP meeting and I was right. Mrs. Leona Stirrup changed Y.C.'s grades from F's to A's.  The dates changed were on December 6th, December 12th and January 9th.  **See exhibit __** for more details regarding this matter.  We have evidence from Pinnacle and email notifications supporting this statement.

55. Moreover, I told Mrs. Marcus that such behavior must stop. Altering grades can change the future of a student by allowing them to receive a diploma but then not have the adequate skill level to succeed in college.  This is why some students may continue to drop out of school. This behavior is punishable by law under the Disciplinary Guidelines 6B -11.007, altering student/school records in violation of paragraph  6B - 1.006(3)(f),(4)(b), 5(a) Principles of Professional Conduct. Violation: the Senate Bill 1712, the Ethics in Education Act. This legislation became effective July 1, 2008.

### PSYCHOLOGICAL ADDENDUM DID NOT CONSIDER Y.C. ELIGBIBLE FOR SPECIFIC LEARNING DISBLAITY OR THE 504 PLAN

56. <u>On January 23, 2012</u> we received a Psychological Addendum for Ms.Maria Bosque Blanco, the psychologist from Charles W. Flanagan High School. She said that Y.C. was updated in month of November 2010 and at that time his reading achievement was within the average range. He was demonstrating progress in reading fluency and was not considered eligible for specific learning Disabled or the 504 Plan.

## DENIED LANGUAGE IMPEDIMENT

57. On January 27th, 2012, the eligibility of determination of Language Impaired (IL) base in evaluation and data was denied team members:

- Mary Hood (LEA Representative)
- Leona Sturrup (General Education Teacher)
- Marsha Decker (ESE Teacher)
- Sherry L. Wilson (Speech Language Pathologist)
- Maria Bosque (School Psychologist Carol Steelman Representative area Program Specialist)

58. Disagreed:

- Rochelle Marcus Legal Aid
- M. C. Mother
- M.C. Husband

## THREE FEDERAL LAWS VIOLATED BY THE DENIAL OF Y.C.'S LANGUAGE IMPEDIEMENT

59. The Individual with Disabilities Act (IDEA) Title II of the American with Disabilities Act of 1.990 (Title II) and Section 504 of the Rehabilitation Act of 1973 (Section 504) address the obligations o fall public schools to meet the communication needs of students with disabilities. See Dear colleague November 13, 2014 U.S. Department of Justice and U.S. Department of Education Civil Rights Division.

## TWO BULLYING INCIDENTS IN CLASS: REFUALS TO HELP Y.C. IN CLASS

60. <u>On February 15th, 2012</u>, teacer Wochiewicz Scott bullied Y.C. two times in class. This incident was reported to Marsha Decker and Legal Aid. The teacher said, " Your gonna fail this class, your not gonna graduate and your mother will come cry to me, and you will cry on the day o fyour graduation because you did not graduate. It`s not my fault

you, don't try."

## THREE FEDERAL LAWS

61. The individual with Disabilities Act (IDEA) Title II of the American with Disabilities Act of 1.990 (Title II) and section 504 of the Rehabilitation Act of 1973 (Section 504) address the obligations of all public schools to meet the communication needs of students with disabilities.  See Dear colleague November 12, 2014 U.S. Department of Justice and U.S. Department of Education Civil Rights Division

## INTERIM IEP MEETING WAS REQUESTED MAY 24TH, 2012 FOR ASSISTED TECHNOLOGY SERVICES AND WERE NOT GIVEN

62. Extra Training of teachers and assisted technology (computer, word processor and voice recorder were requested and not given to Y.C. to help him with his seven classes. Section 300.324. (a)(2)(u) 300.320 (a)(4)

## TEACHERS THAT DID NOT FOLLOW THE IEP AS WRITTEN 2011-2012

63. English II Ms. Julie Hue 11th Grade (1/29/2012- 4/17/2012)
64. Wolneiwicz Scott Geometry Teacher 11th Grade (02/09/2012 – 02/22/2012)
65. Mr. Eduardo Ajuz Geometry 11th Grade (02/27/2012 – 05/07/2012)

## VIOLATION OF THE IEP ON MAY 24TH 2012 BY CHANGING OF HIS COURSES

66. <u>June 13 – 18 – 21-</u> I received a message from Flanagan from Assistant Principal Mary Diarmes informed me that Y.C. classes have been newly changed from the ones already chosen from the IEP team.

## SUMMER WITH COOPER CITY ADULT EDUCATION PROGRAM

67. Y.C. was enrolled in a co-enrolled program in Cooper City at night ot finish ½ of English I that was needed.   The Cooper City English teacher Natalie M. Flaten informed us that the IEP and accommodations was not provided at night time, only in the morning.  (See email sent to legal aid Rochelle Z. Marcus) Y.C. was discriminated against and Cooper

City Adult Education.  The Florida Statues XLVIII 1000.5 (Discrimination against students and employees in the Florida K- 20 public education system prohibited: equality of access required.)

68. Y.C. did not receive his accommodations only until Mrs. Rochelle Marcus, Legal Aid, met with Arlene Schwartz and forced her to allow Y.C. to complete his online computer work at home.

## VIOLATION OF 6A-10.081 PRINCIPLES OF PROFESSIONAL CONDUCT FOR THE EDUCAITON PROFESSION IN FLORIDA

69. On August 14th, 2012,  Mary Hood LEA Representative informed M.C. via email that Y.C.'s schedule is complete and Research I was English III.

70. On August 21, 2012- I sent an e-mail to legal aid and found that Y.C. instead of being enrolled in English III, he was enrolled in a course called Research I Course Number 17003000.   Flanagan placed Y.C. in that course to put him on Virtual counselor inside school during school hours.  After researching the course he have found that it is not English IIII, it's only counts as an elective and is not count as high school credit requirements.

## ALTERING Y.C.'S TESTS IN VIRTUAL COUNSELOR

71. Flanagan altered student tests in violation of  paragraphs 6B -1.006(3)(f), (4)(b), (5)(a), F.A.C. on virtual counselor approximately 21 times while each time was copied 21 times on file from the virtual counselor website.  This began in December 11, 2011 and ended on August 9, 2012. We have evidence to prove this in court.

## CHARLES W. FLANAGAN BEGINNING OF THE 2012 – 2013 SCHOOL YEAR

72. This was by far the hardest school year for Y.C. because with so little time in class and now instead of only having homework assignments and class work for only four classes at a time, now he had 7 classes to worry about for homework assignments and class work. Y.C. now cannot have enough time in class to finish his assignments and then to have homework assignments from school for 7 classes.

## PSYCHOLOGICAL EVALUATION FROM THE BROWARD PYSCHOLOGICAL ASSOCIATES, INC

73. <u>On November2, 2011,</u> there were two recommendations that stuck out ot me form the evaluation.
    a. A developmental eye exam in order to rule out visual problems.
    b. To continue speech therapy in order to improve vocabulary and expressive language skills.

74. The third recommendation just goes with the IEP and states the following:
    a. He will benefit from accommodations in the classroom including  a longer period of time in which to complete projects and take tests as well as quiet room in which to take them.

## TEACHERS THAT DID NOT FOLLOW THE IEP AS WRITTEN 1ST HALF OF THE 2012-2013 SCHOOL YEAR

75. Ms. Nancy Gorman Ceramics 12th Grade (08/30/2012 – 12/19/2012)
76. Mrs. Vicky Helms English III (08/30/2012 – 12/18/2012)
77. Mr. Robert Zeller English IV (09/03/2012 – 12/13/2012)
78. Mr. John O'Bryan Intro to Information and Technology (09/03/2012 – 12/21/2012)
79. Mr. Charles Elicker American Government (10/09/2012 – 10/10/2012)
80. Mr. Bart Graf Algebra Teacher (10/12/2012 – 11/29/2012)

## TEACHERS THAT DID NOT FOLLOW THE IEP AS WRITTEN 2ND HALF OF THE 2012-2013 SCHOOL YEAR

81. Bart Graf  Algebra 2 12th Grade (01/08/2013- 02/2/2013)
82. Charles O'Bryan Intro to Information and Technology 12th Grade (01/14/2013 - 02/04/2013)
83. Robert Zeller English IV 12th Grade (01/06/2013 – 02/23/2013)
84. Ray Evans Physical Education 12th Grade (01/05/2013 – 01/08/2013)

## Y.C.'S VOCAITONAL EVALUATION REPORT RECOMMENDATIONS

85. January 01, 2013: Y.C. will require significant remedial coursework to improve academic skills in reading, math and language prior to entering an occupational training program or an academic post- secondary program of study.

## OUR LAST EMAIL TO LEGAL AID MRS. MARCUS- SUMMARIZING OUR EXPERINECE IN THE BROWARD SCHOOL SYSTEM

86. March 4, 2013: We had reached a point and Y.C. was forced to withdrawal from Flanagan due to the bullying, harassment, discrimination, and negligence of the Broward School System. We had then sent an email to Mrs. Rochelle Marcus explaining the situation with Charles W. Flanagan. We had explained that the bullying had reached a certain point that Y.C. ran away from home to get away from school. He hated Flanagan and it created so many disturbances in the house. So we had to withdrawal Y.C. from Charles W. Flanagan but wanted to consult Mrs. Marcus first on how best to proceed. We were going to enroll Y.C. into Virtual School to finish his remaining courses. He only had 3 months left of school and it was just too much to bear for him. He literally was having the worst time of his life.

87. We were trying to have Y.C.'s IEP fulfilled and followed with Mrs. Rochelle Marcus all this time but it had really lead to nothing good. Every day was just a battle to get his IEP fulfilled, but it just never happened. We were concerned about Y.C. not being able to receive Language therapy for Y.C.'s language impediment and processing problem so we decided to talk to Mrs. Marcus for help on that. We thought that maybe a teacher could come by the house and tutor Y.C. and give him his language therapy that way. However, this was not fixed. Upon Mrs. Marcus reply, she decided we should meet in person to try and salvage the situation. The case was closed with Legal Aid a year later.

## TOTAL EVALUATIONS COMPLTED FOR Y.C.

| Date | Evaluation | Evaluator | Description |
|------|-----------|-----------|-------------|
| 07/09/2010 | Psychological Evaluation | Dr. Marvin Silverman Ed.D. P.A. Licensed School Psychologist #SS244 10000 Stirling Road # 6 Cooper City, Fl 33024 | We had this evaluation done on our own behalf. The Charter School System did not evaluate Y.C. at any time even after we had requested it. |

| | | | |
|---|---|---|---|
| 11/16/2010 | Psychological Evaluation | Flanagan High School Kurt Wasser | |
| 07/08/2011 | Speech Therapy Evaluation | Kid's Spot Danielle Monterrey M. E. | |
| 10/01/2011 | Pyscho Educational Evaluation | Nova Southeastern University Supervisor Ralph E. Cash PH Licensed Psychologist | |
| 01/10/2012 | Psychological Addendum | Charles W. Flanagan High School Maria Bosque – Bianco | |
| 01/24/2012 | Language Evaluation | Charles W. Flanagan High School, Ms. Sherry Wilson | |
| 02/15/2012 | Individual Education Plan (IEP) | Mary Hood, ESE Specialist Marsh Decker, Support Facilitator Sheri L. Wilson, Speech Language Pathologist Sturrup Leona, General Education Teacher Rochelle Marcus, Legal Aid | Program Eligibility: Specific Learning disabled, Other Health Impaired, Language Impediment Service. |
| 11/02/2012 | Psychological Evaluation | Vocational Rehabilitation Cheryl Gotthelf, Ph.D. | |
| 01/05/2012 01/12/2012 01/19/2012 | Vocation Evaluation Client Report | Ivan P. Jasper, CVE Counselor – Julie Emerson | |

**The Plaintiff is entitled to relief from defendants under the above facts on the basis of defendant's bullying, harassment and discrimination towards Y.C.**

## FIRST CLAIM FOR RELIEF

### DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. 1983

88. The defendants acting under color of state law as public school teachers, principals, administrators, superintendent and the board of education, deprived the plaintiff Y.C. to

Free Appropriate Public Education (FAPE) as guaranteed by Federal and state laws for the education and protected by the Fourteenth Amendment of the United States constitution.

## SECOND CLAIM FOR RELIEF

### CHILD FIND VIOLATIONS

89. From 2000-2012 (12 years) the Child Find requirements in 34 CFR 300.111 and section 612 (a)(3)(a) of the act requires that all children with disabilities in the state who are in need of special education and related services be identified, located and evaluated. The state or LEA is not conducting evaluations and making eligibility determinations in a timely manner. This could raise questions whether the state of LEA is in fact in compliance with the Act.

90. 34. CFR 300.226-34 CFR 300.646 permits a local agency (LEA) to use 15% of part B. Funds for Early Intervening Services (EIS)

91. The School District failed to implement Child Find requirements for 11 years between 2000 – 2011.  The district never initiated an evaluation of Y.C. or initiated an early intervention from all the relevant data present.

## THIRD CLAIM FOR RELIEF

### DISCRIMINATION IN VIOLATION OF THE AMERICAN WITH DISABILITIES ACT (ADA)

92. Title II of The American with Disabilities Act of 1990 prohibits discrimination by any public entity, any state or local government. This is defined by 42 U.S.C § 12131, section 201 of the ADA.

93. The Broward County School District failed to provide appropriate services, by appropriately trained/credentialed providers.

## FOURTH CLAIM FOR RELIEF

### VIOLATION OF THE 504 REHABILITATION ACT OF 1973 29 USC 794

94. The District of Broward denied Y.C the benefits to provide a free appropriate public education creating a hostile educational environment.

   a. Charles W. Flanagan conducted discriminatory evaluations.

   b. The Broward School District did not follow the IEP as written.

   c. Assisted technology services that were requested at the May 24th, 2012 IEP meeting were not given to him.

   d. The 504/ADA plan was denied on March 8th, 2011.

   e. Cooper City High School evening program failed to provide specified accommodations and additional support in class.

   f. Alteration of Grades and Tests from teachers at Charles W. Flanagan High School.

   g. Bullying by teachers.

18

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF THE TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

95. Y.C was specifically targeted and harassed by the district of Broward schools on the basis of his race.

    a.  This occurred through the discriminatory administration of discipline from Pembroke Pines Charter High School from 2009 – 2010.

    b.  Y.C was given 15 days of suspension and 30 days of detentions.

## EXHAUSTION OF ADMINSITRATIVE REMEDIES

**Federal and State Courts have often provided Judicial relief in the absence of the exhaustion of administrative remedies, no court requires exhaustion when exhaustion involves irreparable damages.** Conferences with principals, assistant principals, teachers, guidance counselors, emails and request evaluations were done. From the years of 2000-2010 Y.C. was enrolled at Pembroke Pines Charter Elementary School East Campus, Pembroke Pines Charter Middle School Central Campus and Pembroke Pines Charter High School for grades K-9 He went to Charles W. Flanagan for grades 10th, 11th, and part of 12th grade.

During these years that Y.C. struggled in school M.C. was never informed about the Individual with Disabilities Act IDEA Section 504 of the Rehabilitation Act 1973 American with Disabilities Act 1990, Florida Educational Equity Act Section 1000.05 FL Statutes.   During these years M.C. was never given the Notice of Procedural Safeguards for Parents of Students with Disabilities. What do we do with the 11 years that Yanni was denied Special Education and Language Therapy? The damages are irrecoverable. *

During these years, I was not made aware that the government had federal programs to help all the students in this country.

"On August 24, 2010 Florida was notified that it would receive up to 700 million in federal funds through The Race to the Top grant programs. These funds are being used to improve lowest performing schools, develop teacher and principal evaluation systems and increase the academic achievement of students. Funds are being allocated to participating districts over a four year period. Federal funding also supports no child left behind programs. " – from Funding for Florida School Districts, 2013-14 statistical report

## Charter Schools

| | |
|---|---|
| 2000 - 2001 | Progress Report Kindergarten |
| 2001-2002 | Progress Report First Grad |
| 2009 | Request Evaluation |
| Nov. Dec 2009 | 15 Day Suspension |
| 01/ 2010 | Teacher Conference |
| 03/18/2010 | Collaborative Problem Solving Team Intervention |
| 04/7/2010 | Meeting Report Parent |
| 04/26/2010 | Interview F.B.A. (Functional Behavioral Assessment) Parents |
| 5/24/2010 | E-mail from Mery Castillo to Ilisa Bianco, Psychologist, asked about evaluation. Bianco responds that there has been no new evaluation. |
| 5/28/2010 | Mery Castillo emailed Principle Peter Bayer asking |

| | |
|---|---|
| | about evaluation for Yanni |
| 5/2010 | Student Interiew for Functional Behavior Assessment by Ilisa M. Bianco |
| 6/1/2010 | Questionnaire was given to Yanni from Bianco |
| 6/2/2010 | Functional Behavioral Assessment from Teachers: Mrs. K. Davis-Benony, Ms. Soto, Mrs. Dobbs, Mrs. Laffin, Mrs. L. Ramirez, Mrs. Jennifer Diaz |
| 6/9/2010 | Summary of Parent Conference – The last day of school no evaluation provided |
| 6/2010 | Yanni failed all his 9th grade classes without earning any high school credits. |
| 6/10/2010 | E-mail from Peter Bayer (principle) about records regarding Yanni's evaluation in summer because Charter school did not do it. |
| 2005-2010 | Benchmark Records Mathematics and Reading |
| 7/9/2010 | Private Evaluation by Dr. Marvin Silverman (Summer) |
| 8/9/2010 | Letter request evaluation from Charles W. Flanagan |
| | ## Charles W. Flanagan High School |
| 9/14/2010 | Parent Consent for Evaluation. Notice of Proposal Evaluation procedures, test, records or reports that were used as a basis for the actions described include FCAT, FCAT, FCAT, FCAT, FCAT, FCAT |

| | |
|---|---|
| 11/2/2010 | Received letter: Progress Monitor Plan F.S. 1008.25 told of Yannis's weakness in reading and math |
| 11/29/2010 | Benchmark Assessment Test Reading |
| 12/14/2010 | Gave Medical Evaluation Form for ADHD to Psychologist Dr. Kurt Wasser |
| 12/2010 | Psychological Report from Flanagan High School by Dr. Kurt Wasser |
| 1/07/2011 | Eligibility Document states it does not meet eligibility criteria for exceptional student's education. Data Analysis Worksheet for Specific Learning Disabilities Eligibility Determination |
| 2/24/2011 | Gave a letter the assistant principal Vivian Suarez requested 504 Plan |
| 03/29/2011 | A Portrait of Yanni Castillo |
| 03/29/2011 | The team Denial 504 |
| | The School Board of Broward County Seccion 504/ADA |
| 4/11/2011 | Subtest information |
| 06/1/2011 | Legal Aid  took our case |
| 07/08/2011 | Speech and language evaluation Kid's Spot |
| 09/8/2011 | Email  to  intensive reading to check Yanni's performarse In school |
| 9/12/2011 | Benchmark test geometry |
| 9/26/27/2011 | Email geometry Yanni performance in school,pinnacle |

|  | Memorandum Progress Monitoring Plan |
|---|---|
| 9/27/2011 | Email and assignment report  from pinnacle<br><br>Inapropriate  schedule .They chose English III even<br><br>though he did not finish I or even to finish English II |
| 01-/2/2012 | Nova evaluation |
| 01/18/2012 | Reading teacher changed Yannis grade from f to A before<br><br>The IEP meeting |
| 01/23/2012 | Psychological addendum from Charles w.flanagan |
| 01/27/2012 | Language Impediment was denied.<br><br>The school Board of Broward County,Language<br><br>Eligibility Criteria<br><br>Progres Monitor nov 17/20911 |
| 02/09/2012 | ELIGIBILITY  criteria for Specific Learning Disabled and<br><br>Other Health Impediment |
|  | IEP |
| 02/16/2012 | Email Juliet Hue after IEP 2? |
| O2/14/2012 | Classroom bullying Wolniewicz Scott |
| 02/2012 | Visual Evaluation |
| 11/8/.2012 | Psychological Evaluation, Vocational Rehabilitation |
| 01/5,12,19 | Vocational evaluation |

## TEST SCORES FALSIFIED

Since December 11, 2011 to August 9th 2012.

This is only a small portion of all the suffering Y.C. received during his years in the Broward Education System. There is more evidence for discovery.

## JURY DEMAND

Plaintiff hereby demands that this matter be tried to a Jury.

## PRAYER

Wherefore, plaintiff's pray for Judgment as follow.

## COMPENSATORY DAMAGES TO PLANINFF FOR;

96. Emotional Psychological abuse caused him to drop out of High School without any skills.
97. Due to all the damages incurred by the school District Y.C. was unable to attend post secondary education.
98. Specific Educational deficits in reading, math, writing and language.
99. Since the Evaluation from Vocational Rehabilitation in January 5th 2013. Y.C. has a language level of a second grade. 10 years below. This is significant damage to his future.
100. Broward School District Failed to evaluate and diagnose Y.C.'s disability in a timely manner.
101. Failure to provide language therapy for 11 years.

Compensatory damages are in the amount of 3,000,000 ___ or what the court deems just and proper for The School Board of Broward County.

Compensatory damages are in the amount of 300,000 ___ or what the court deems just and proper for Robert W. Runcie.

Punitive Damages against Defendants from THE SCHOOL BOARD OF BROWARD COUNTY, FLORIDA, and ROBERT W. RUNCIE, Superintendent and each of them;

Attorney's fees and costs; and

Such other and further relief as the court deems just and proper.

Dated; May 22.2015

MERY CASTILLO

PLAINTIFF

24

# EXHIBIT
# COMPLAINT
# LETTER

25

# THE PLAINTIFF REQUESTS THIS COMPLAINT LETTER BE USED AS OUR FIRST STEP FOR GOING TO TRIAL AS AN EXHIBIT

## INTRODUCITON

The Broward School District has denied Y.C. his rights to a special education for 11 years. During this time, our son and family has been victim to bullying, harassment, discrimination and negligence. From the years of 2000 – 2010, Y.C. was enrolled at Pembroke Pines Charter Elementary School East Campus, Pembroke Pines Charter Middle School Central Campus and Pembroke Pines Charter High School for grades K - 9. He went to Charles W. Flanagan for grades 10th, 11th and part of 12th grade. Y.C. withdrew from Charles W. Flanagan 3 months prior to receiving his high school diploma because the abuse had become too severe. In fact, he ran out of the house just to get away from school and said he was not going to go back there anymore in his life.

## Plaintiff's Actions After the Damages Were Realized

After the bullying, harassment, discrimination and negligence received in the charter school system, we then decided to have him enrolled into Charles W. Flanagan High School. The reason we did so was because the Pembroke Pines Charter School System failed to identify Y.C. Castillo with his learning disabilities, even after we had requested an evaluation be completed to assess his needs. Upon asking for an evaluation in the beginning of his freshman year, Ms. Taby, the assistant principal neglected our requests for the entire year and instead sought out with the rest of the faculty and staff to have Y.C. leave because it was too hard for him.

The exact words used by Ms. Bounomo, guidance counselor, were that if the school was too hard for him, perhaps he should move to a different school. Upon hearing this, we were taken back and then Y.C. was then targeted as a faulty student who did not deserve their help. There was no remediation, accommodations or anything done for Y.C. during his stay at Pembroke Pines Charter High School. Instead he was being pushed to get kicked out or expelled from that school. This of course did not happen as Y.C. did not show any behavioral issues. In fact, Y.C. was doing so poorly that he ended up failing all of his classes for his entire freshman year.

We had requested an evaluation and tried to work with the school but they did not do anything about it. Since, we were uneducated at the time regarding school laws and policies we did the next best thing and after Y.C. finished his freshman year at Pembroke Pines Charter High School we had an evaluation completed by Dr. Silverman on July 9th 2010. This is where we found out that there were some learning disabilities that Y.C. was struggling with. In fact, the reason why we are making this case is because based on all the data of the assessment tests throughout the years, Y.C. was not identified and given the evaluations in the past to really accommodate to his needs in school.

After 10 years in the charter school system, Y.C. has only received a level 3 in 4th grade for the FCAT from grades K – 9 in the Pembroke Pines Charter School System. We had requested an evaluation in October 2009 and Pembroke Pines Charter School did nothing about it however Y.C. received a level 1 in the FCAT reading and if you look at the Benchmark tests, Y.C. scored 0% out of the national/district percentage in eighth grade and scored very low in all his other

26

years including his freshman year and once again, Pembroke Pines Charter High School did nothing about it once more.

| | Grade 4 | Grade 5 | Grade 6 | Grade 7 | Grade 8 | Grade 9 |
|---|---|---|---|---|---|---|
| FCAT Reading | 3 | 1 | 2 | 1 | 2 | 1 |

| | Grade 4 | Grade 5 | Grade 6 | Grade 7 | Grade 8 | Grade 9 |
|---|---|---|---|---|---|---|
| Benchmark Reading | | 10% | 31% | 27% | 0% | 4% |

Some of the information presented here may seem very repetitive but it is only because the bullying, harassment and discrimination was very repetitive year after year, some worse than others. The last years of the plaintiff's high school involvement were the worst for him, but most of the damage could have been prevented if the laws were administered completely.

Thus, the information you will read is based on the same general concept of bullying, harassment and discrimination. Be advised that this is an extensive amended complaint because there was so much evidence and incidents done to the plaintiffs.

>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>

# <u>Y.C's Entrance into the Pembroke Pines Charter School System (Elementary & Middle School) Early Intervention</u>

1. When Y.C. started in Kindergarten he had trouble learning the alphabet. After that, he always struggled to get good grades. (Ms. Ollet)

2. During this time, Y.C. was not allowed to take physical education because he always had to take an extra intensive reading class. It was an attempt to remedy his below average reading. This went on from 2001 to 2011, yet Y.C. didn't make any progress.

# <u>Child Find</u>

3. From 2001 to 2011, Y.C. didn't pass any Benchmark Test. And, from 2005 to 2011 Y.C.'s FCAT reading scores were either <u>**1**</u> or <u>**2**</u> due to his reading deficiencies for a total of <u>**7 consecutive years**</u>. In addition, in math he also scored 1 or 2. Due to this grades and incidents, it was very obvious that Y.C. had major problems. My husband and I were not offered any type of help or special services which he qualified for. He in fact qualified during his elementary and middle and his high school years from 2000 – 2011.

4. Child Find Obligation C.F.R. 34.300.111 Section 612 (a)(3)(A) of the Act authority 20 U.S.C. 1401 (3) 1412 (a)(3). Require that all children with disabilities in the state who are in need of special education and related services be identified, located and evaluated.

27

# Y.C.'s Failing Year at Pembroke Pines Charter High School (Bullying, Harassment, Discrimination and Negligence)

5. <u>By 2009 - 2010</u>, freshman year, Y.C.'s disabilities became very obvious his grades were F's and had a terrible time. Since, he used to get detentions and he wasn't getting any help especially from his guidance counselor Ms. Jennifer Buonomo because instead of trying to help him and give him the proper education he desperately needed, she told him that if Pembroke Pines Charter High School was too hard for him, he may be better off in a different school.

## Y.C.'s "Petty" Theft

6. <u>On October of 2009,</u> we spoke to the assistant principal Ms. Debra Tabie about the incident. Y.C. began to get even more detentions and suspensions. On November 2nd, 2009 Y.C. was in the Cafeteria and left the cashier heading to his table for lunch. He accidentally forgot to pay a little bite size rice crispy. Mrs. Buonomo was next to the cashier and stopped him. She didn't believe him that it was an accident. So, Y.C. got a charge of petty theft and a 3 day suspension. In the state of Florida, the laws dictate that petty theft of the second degree of authority under the $100.00 is only considered theft when there is an **intention** to steal. There was no intention to steal on Y.C.'s behalf. However, Y.C. then had to miss more school days, which put him back even more for school.

## The Discriminatory Detentions and Suspensions

7. In <u>2009-2010</u> Y.C. received 30 detentions, 15 days of suspension and did not pass any class for the entire year. This was his freshman year at Pembroke Pines Charter High School.

## Violations

8. Discriminatory Administration of discipline for Charter High School (34. C.F.R. 300.530, 300.534, 300.536, 34 C.F.R. 300.29)

9. Section 504 of Rehabilitation Act of 1973 and Title II of the American with Disabilities Act 1990
- Violation of the title VI of the Civil Rights Act 1964
- Violation of the Constitutional Rights 42 U.S.C. 1983
- Child Find Violation

10. The State educational agency examines data, including data disaggregated by race and ethnicity, to determine if significant discrepancies are occurring in the rate of long-term suspensions and expulsions of children with disabilities in accordance with 20 U.S.C. 1412(a)(22)(A)-(B); 34 CFR 300.170.

28

11. See letters sent to charter schools from U.S. Department of Education on May 14, 2014 about legal obligations under Federal Civil Rights Laws, including prevention of harassment, disciplinary measure (suspension and expulsion).

12. See letter letters sent to elementary and secondary schools by U.S. Department of Education and U.S. Department of Justice about the schools meeting their obligations under Federal Law to administer student discipline without discrimination.

## Our Request to Have Y.C. Rightfully Evaluated from the School Pembroke Pines Charter School (PPCHS)

13. In October 2009 we requested to Pembroke Pines Charter High School to receive an evaluation for Y.C.. The administration then denied the evaluation request and never gave us a written explanation as to the reasons why they made that decision. (Violation of 34 C.F.R 300.503 (b) and Section 612 (a)(3) of the Act. Melody Musgrove Ed. D Director of Special Education Program). Refresh the School Administrator to avoid using the R.T.I to delay or deny a timely initial evaluation for children suspected of having a disability Regulations 34 C.F.R. 300.301 (b)34 C.F.R. 300.304. 300.311.

14. School day suspensions: 11/02/09 – 11/03/09: 3 days of suspension
Y.C. forgot to pay for a little rice crispy for $.75. For this offense Y.C. was not given an opportunity to explain the situation. I paid for the item. He later was charged with petty theft which is $100 or less.

15. 11/09/2009 – 11/23/2009: 10 days of suspension
Y.C. was in a fight with another student that initiated the fight. He later defended himself. The other student was bigger and older than him and he was accompanied by another student.

16. 12/17/2009 – 12/18/09: 2 days of suspension

17. Y.C. failed to serve a Saturday Detention.

18. Total Suspensions for the year of 2009:15 Suspensions

## The January Conference Meeting Discussion (January 2010)

19. In January 2010 we conference meeting with the assistant principal Debra Tabie, Geography teacher Jennifer Diaz, English teacher us Khea Davis, Intensive Reading Teacher Ms. Nancy Laffin and Algebra Teacher Ms. Tracy Soto. This conference meeting was about Y.C. failing his classes and what can be done about it. As the meeting started Ms. Davis, Ms. Diaz and Ms. Laffin complained that Y.C. was a manipulator because he didn't do his work. In fact, they said that they chose to exclude Y.C. from any project in class. Moreover, Ms. Diaz said in front of us and Y.C.. "That if he was working for her she would have fired him already."

20. All in all, they said that they were going to help him. These are just few influences that

29

occurred during Y.C.'s stayed in Pembroke Pines charter school.

A. Mrs. Diaz called Y.C. Jackass in front of the class.
B. Mrs. Laffin kept Y.C. a come for three weeks he could hardly sue the board.  She told other classes that Y.C. was going to be a bum.
C. Ms. Tracy Soto gave Y.C. 12 detention in one month 2 of them in 1 hour.  Y.C. was escorted from her class with security because talking white other students were doing the same.  Consequently, Y.C. had enough and rand away from home.  We found him bought him back home.  It was a very sad day for our family.

21. In March 2010, a collaborator Problem Solving Comprehensive evaluation was conducted by the teachers.  Geography teacher Jennifer Diaz areas of concern: Reading comprehension, proof reading grammar, punctuation capitalization.  Reading teacher Mrs. Jennifer Laffin and The English teacher Mrs. K. Davis expressed concern in sight vocabulary, work attack, decoding skills, reading comprehension habitably to express ideas in writing, speed/fluency/writing expression, grammar and ability to express ideas and concepts orally.

22. Also, Ms. Davis commented that Y.C. was lazy and didn't complete the work.  Mrs. Tracy Soto, Algebra teacher only said that Y.C. needed a tutor.  There were 6 teachers but only 4 filled the form.  The Cps evaluation demonstrates that Y.C. lacks in skill of Reading Comprehension, language and math.

**Email from the School Psychologist (May 24, 2010)**

23. In May 24, 2010, we sent Ms. Ilaisa M. Barreiro Bianco, School psychologist, M. Ed an email to schedule a day to go over Y.C.'s evaluation and Intervention.  She replied that there has not been an evaluation but the school is putting in place interventions.  After that Mrs. Bianco interview for F.B.A. assessment, and Y.C. told Mrs. Bianco what the teachers were doing and telling him.  Y.C. was asked to fill a questionnaire "What pops? … Into your mind? And student Reinforcement /interest inventory.

**The June 2 Functional Behavior Assessment (Last days of the school year)**

24. In June 2, 2010 one week before school was over.  The teacher filled functional behavior assessment.  Mrs. Lourdes Ramirez, Biology teacher, recommended that Y.C. ought to be evaluated for A.D.D., Y.C. should see a counselor for possible depression and that Y.C. struggles academically when taking notes and with test/assessments.

**Team Collaborative Problem Solving Meeting Integrated by the School Teacher and Faculty (June 9th, 2010)**

25. On June 9th, 2010, we had a conference meeting with the team collaborative problem solving integrated by Elisa Bianco, Peter Bayer, Jennifer Buonomo, Debra Tabie and Mrs. Nancy Laffin (Intensive Reading ESE teacher).  During the meeting, the collaborative problem solving team gave us the functional behavior assessment (FBA) for Y.C. which was

3D

conducted throughout the year.  No evaluation was provided and the following were the interventions already attempted at that time: Preferential Seating, Extended Times, and Parental Contact.

26. Goals were to increase attention, productivity and motivation for the following 2010-2011 school year.  The Functional Behavior Assessment is necessary when a student demonstrates behaviors that are persistent and disruptive to the degree that they impede a student's learning and have not responded to typical classroom intervention. FBA must be conducted in accordance with the evaluation procedures in 34. C.F.R. 300.304. 300.311.

## The Retrieval of the CUM Folder for Our Private Evaluation

27. *The CUM folder is the cumulative folder that contains all of Y.C.'s records for his entire school which was in the Charter School System. We sought to retrieve this folder so we could give this to a private evaluator.  The school was not fulfilling their duties in providing him with an evaluation even though Y.C. rightfully deserved one.  The Charter School system did not provide Y.C. with a Free Appropriate Education and tend to his needs correctly.  Since they had not evaluated him after all this time, even after our request for an evaluation during the month of October 2009, we decided to take matters into our own hands to try and salvage our son's education and future by providing him with a private evaluation by Dr. Marvin Silverman.*

28. On this same day we requested the CUM folder from the school and gave collaborative problem solving team the Conner's 3 teacher rating scale report to be filled by Y.C.'s teachers.  The reason we requested these forms was because we needed to give it to Dr. Marvin Silverman Ed. D.P.A. for Y.C.'s Private Evaluation.

29. Below you will find the data regarding Y.C.'s Assessment Tests that were administered to Y.C. throughout all his years in the Pembroke Pines Charter School System from elementary, middle and freshman year at high school.  These tests include the Florida Comprehensive Assessment Test scores (FCAT), Benchmark Assessment Test Scores (BAT), NRT test scores and Sunshine State Standards Test Scores (SSS).

## Broward School Did Not Look at the Following Data

30. This provided for all school and district administrators, principals, guidance counselors, reading coaches and for teachers to maintain folders and portfolios of the student's work and overall progress. These tests are given in chronological order with a graph to show Y.C.'s of overall progress and lack of improvement.  The overall objective of this graph and data is to show that Individual needs Assessment needs to account for the gaps in their educational progress and fix the gap to normal state standards per subject area. As you can see in the graph below, these gaps were not properly remediated as his rights guarantee him that he must receive as Free Appropriate Public Education.

31. All these assessment were relevant information about Y.C. weakness in reading, math and language for years that the school never saw. This was delivered indifference for the staff of Pembroke Pines Charter School System and the Broward District Schools.

| Date Youngest to Oldest | Grade | Test | National/District Percentile | Achievement Level | Score |
|---|---|---|---|---|---|
| 04-14-2002 | 2 | Stanford Problem Solving | 54% | NA | 551 |
| 04-14-2002 | 2 | Stanford Reading Comprehension | 59% | | 537 |
| | | | | | |
| 04-01 2003 | 3 | Stanford Reading Comprehension | 28% | NA | NA |
| 04-01 2003 | 3 | Stanford Problem Solving | 57% | NA | NA |
| | | | | | |
| 03-01-2004 | 4 | FCAT SSS Reading | NA | 3 | 287 |
| 03-01-2004 | 4 | FCAT SSS Mathematics | NA | 3 | 336 |
| 03-01-2004 | 4 | FCAT NRT Reading | 32% | NA | 591 |
| 03-01-2004 | 4 | FCAT NRT Mathematics | 64% | NA | 620 |
| | | | | | |
| 12-12 2005 | 5 | Benchmark Assessment Test Mathematics | 42% | NA | NA |
| 12-12 2005 | 5 | Benchmark Assessment Test Reading | 10% | NA | NA |
| 03-13 2006 | 5 | FCAT SSS Science | NA | 2 | 285 |
| 03-13 2006 | 5 | FCAT SSS Reading | 24% | 1 | 236 |
| 03-13 2006 | 5 | FCAT SSS Mathematics | 62% | 3 | 326 |
| 5/23/2006 | 5 | Stanford Diagnostics | **6%** | NA | NA |
| | | | | | |
| 9/18/2006 | 6 | Benchmark Assessment Test Mathematics | 46% | NA | NA |
| 9/18/2006 | 6 | Benchmark Assessment Test Reading | 31% | NA | NA |
| 11/27/2006 | 6 | Benchmark Assessment Test Mathematics | 23% | NA | NA |
| 11/27/2006 | 6 | Benchmark Assessment Test Reading | 27% | NA | NA |
| 2/26/2006 | 6 | FCAT SSS Reading | NA | 1 | 187 |
| 2/26/2006 | 6 | NRT Reading | 4% | NA | 584 |
| 2/26/2006 | 6 | FCAT SSS Mathematics | NA | 1 | 236 |
| 2/26/2006 | 6 | NRT Mathematics | 21% | NA | 623 |
| | | | | | |
| 9/24/2007 | 7 | Benchmark Assessment Test Mathematics | 46% | NA | NA |
| 9/24/2007 | 7 | Benchmark Assessment Test Reading | 31% | NA | NA |
| 11/26/2007 | 7 | Benchmark Assessment Test Mathematics | 23% | NA | NA |
| 11/26/2007 | 7 | Benchmark Assessment Test Reading | 27% | NA | NA |
| 1/24/2008 | 7 | Fluency Assessment Test | | | 112 |
| 3/11/2008 | 7 | FCAT SSS Reading | | 2 | 274 |
| 3/11/2008 | 7 | FCAT SSS Mathematics | | 1 | 202 |
| 3/11/2008 | 7 | NRT Reading | 13% | NA | 615 |
| 3/11/2008 | 7 | NRT Mathematics | 12% | NA | 621 |
| 4/29/2008 | 7 | Fluency Assessment Test | | | 89 |

32

| Date | Grade | Test | | | |
|------|-------|------|----|----|-----|
| 9/15/2008 | 8 | Benchmark Assessment Test Mathematics | NA | NA | NA |
| 9/15/2008 | 8 | Benchmark Assessment Test Reading | NA | NA | NA |
| 9/18/2008 | 8 | Fluency Assessment Pretest | | | 107 |
| 11/18/2008 | 8 | Benchmark Assessment Test Mathematics | 0% | NA | NA |
| 11/18/2008 | 8 | Benchmark Assessment Test Reading | 0% | NA | NA |
| 1/28/2009 | 8 | Fluency Assessment Test | NA | NA | 119 |
| 2/10/2009 | 8 | Writing Test | NA | 4 | NA |
| 3/10/2009 | 8 | FCAT SSS Science | NA | 1 | 182 |
| 3/10/2009 | 8 | FCAT SSS Reading | NA | 2 | 298 |
| 3/10/2009 | 8 | FCAT SSS Mathematics | NA | 3 | 324 |
| 5/1/2009 | 8 | Fluency Assessment Test Post Test | NA | | 121 |
| | | | | | |
| 9/9/2009 | 9 | Benchmark Assessment Test Mathematics | 10% | NA | NA |
| 9/9/2009 | 9 | Benchmark Assessment Test Reading | 4% | NA | NA |
| 3/9/2010 | 9 | FCAT SSS Reading | NA | 1 | 235 |
| 3/9/2010 | 9 | FCAT SSS Mathematics | NA | 1 | 218 |
| | | | NA | NA | NA |
| 9/13/2010 | 10 | Benchmark Assessment Test Reading | NA | NA | NA |
| 9/13/2010 | 10 | Benchmark Assessment Test Mathematics | NA | NA | NA |
| 10/13/2010 | 10 | Pre SAT  gr10 Saturday ADM | NA | NA | NA |
| 10/13/2010 | 10 | Pre-SAT Writing | 26% | | 34 |
| 10/13/2010 | 10 | Pre-SAT Verbal | 9% | | 29 |
| 10/13/2010 | 10 | Pre-SAT Math | 8% | | 30 |
| 11/9/2010 | 10 | Writing Response Prompt Expository | NA | 1 | 1 |
| 11/29/2010 | 10 | Benchmark Assessment Test Reading | 2% | NA | NA |
| 11/29/2010 | 10 | Benchmark Assessment Test Mathematics | 3% | NA | NA |
| 03/01/2011 | 10 | FCAT Writing Expository | NA | 3 | 3 |
| 4/11/2011 | 10 | FCAT Mathematics | | 1 | 280 |
| 04/11/2011 | 10 | FCAT Reading | | 1 | 268 |
| 05/16/2011 | 10 | Polynomials: End of Course Assessment | 31% | | 3/10 Cor |
| 05/16/2011 | 10 | Functions, Linear Equations, & Inequalities :End of Course Assessment: | 17% | | 5/30 Co |
| 05/16/2011 | 10 | Discrete Mathematics: End of Course Assessment | 1% | | 0/12 cor |
| 05/16/2011 | 10 | Algebra: End of Course Assessment | NA | | 41 |
| | | | | | |
| 09/12/2011 | 11 | Benchmark Assessment Test Mathematics | 51% | | |
| 10/10/2011 | 11 | FCAT Reading Retake for 10th Grade | | 2 | 311 |
| 10/10/2011 | 11 | FCAT Reading Retake for 10th Grade | | 2 | 308 |
| 10/13/2011 | 11 | SAT Reading | | | 280 |
| 10/13/2011 | 11 | SAT Writing | | | 270 |
| 10/13/2011 | 11 | SAT Mathematics | | | 360 |
| 10/28/2011 | 11 | High School Competency Test Mathematics | | | Yes ("Passed |
| 10/28/2011 | 11 | High School Competency Test | | | Yes ("Pa |

33

| | | Communications | | | 72 |
|---|---|---|---|---|---|
| 04/02/2012 | 11 | Post Secondary Education Reading (PERT) | | | 98 |
| 04/02/2012 | 11 | Post Secondary Education Math (PERT) | | | 37 |
| 04/30/2012 | 11 | End of Course Assessment Geometry | | | |

32. The Federal Regulations under 34 C.F.R. 300.309 require that if a child has not made adequate progress after appropriate period of time a referral for an evaluation must be made. Not required as long as a time to complete an evaluation because of the amount of data already collected on the child achievement, including observation data. 34 C.F.R. 300.111 and Session 612 (a)(3)(A) of the Act require that all children with disabilities in the state who are in need of special education, and related services be identified, located and evaluated. Therefore, it generally would not be acceptable for an LEA toward 11 years for conducer ma evaluation and then deny the 504. The state or LEA of not conducting evaluations and making eligibility determinations in a timely manner, this state or LEAR is in compliance with the act.

**Y.C.'s Evaluation by Dr. Silverman**

33. In July 9th 2010, Y.C. was given a complete evaluation by Dr. Marvin Silverman test Administered

- Wechsler Intelligence Scale for Children _IU
- Woodcock- Johnson III (NU) Tests of cognitive abilities and Achievement (Selected clusters and subtest).
- Bender Gestalt Test – 2
- Revised children's Manifest Anxiety Scale – 2
- Gordon Diagnostic System
- Corner's Rating Scales.

34. Dr. Silverman reported that "the data are consistent with 315.9 learning disorder not otherwise specified. This is marked by a deficit in processing speed. Y.C. manifests behaviors that are consistent with the diagnostic criteria for *Attention Deficit Hyperactivity Disorder – Combined Type (314.01)."*

**Dr. Silverman's Recommendations**

35. Dr. Silverman recommended and emphasized that Y.C. needs immediate interventions in the areas of reading and fluency by a professional one on one therapy and counseling. In addition, he needs math skills such as those taught in middle school and needs 100% extended time for classroom assignments and tests. Failure to not address his needs based on the recommendations given by Dr. Silverman could result in being at risk for additional learning, attention, behavioral and emotional struggles. This of course was reported by Dr. Silverman himself in the evaluation provided to Charles W. Flanagan High School.

34

36. As soon as we find out about Dr. Silverman and Y.C.'s Pediatrician Dr. Robert T. Gonzalez MD FAAP, PA recommended we look for a therapist called Dr. Arturo CID LCSN, BCD for additional treatment.  We contacted Dr. Arturo CID in August of 2010 and started to have Y.C. see him during his time at Charles W. Flanagan High School.

## Y.C. first enrolls into Charles W. Flanagan High School (August 2010)

37. When Y.C. was admitted to Charles W. Flanagan we met with the Guidance Counselor for 9th grade Ms. Patricia Mucha; she registered Y.C. in 10th grade; even though he failed every class in 9th grade in charter High.  We gave a letter to Ms. Mucha and the evaluation of Dr. Marvin Silverman (28 pages).  We also reminded her of the Doctor's recommendation "Y.C.'s ADHD is significantly impacting his academic performance and that he needed the special education service ASAP.

## Y.C.'s RTI Assessment Period

38. In addition we asked to have Y.C. be tested for both ADHD and Learning Disabilities. We also requested to consider a 504 plan to help Y.C. during the R.T.I. assessment period.  On September 14, 2010 we received a parental consent notice: Screening/formal Evaluation (language and vision).  These options were rejected because they were insufficient to meet the educational needs of our child and/or are not appropriate for our child at this time.  According to the rule 6A-6.030121 (LI) #7(a) Due to deficits in students language skills, the student does not perform and/or function adequately for the student's chronological age or to meet grade level standards in one or more of the following areas: oral Expression, listening comprehension, social interaction, written expression, phonological progressing or reading comprehension.  Student should receive language impediment and appropriate services.

39. According to the wide data FCAT scores, Progress monitoring assessment reports, and the fair D.A.R. Benchmark; Y.C. qualified for language impediment. Policies and procedures for students with disabilities. Section B.14: Exceptional Student Education Eligibility for students with language impairment.  Stature and Regulatory Citations.  34 C.F.R. 300.8, 300.34 and 300.306 Sections 1003.01 and 1003.57, F.S. Rule 6A – 6.030121, F.A.C.

40. On September 14, 2010 we receive a notice of proposal from Flanagan High. The following is a scanned piece from the document.

35

**After a careful review of your child's education program, we are proposing the following action(s):**
1. Yanni will receive tier 2 intervention for reading. 2. To evaluate

**The action(s) described above are proposed because**
1. Tier 1 data indicates need for intervention 2. Parent request

**Evaluation procedures, tests, records, or reports that were used as a basis for the actions described above include**
FCAT, FCAT, FCAT, FCAT, FCAT

**Before making this decision, the following options were considered and rejected**

| Option(s) Considered | Why Rejected |
|---|---|
| not to evaluate | parent request |
| provide Tier 3 intervention | data does not support |

**If other factors were relevant to this decision, they are described below**
none

41. On November 2nd 2010, we received a letter of Progress Monitor Plan which informed us that Y.C. has been identified as below grade level in 2 areas Reading and Math. And, He needed an intensive strategy skill instruction and Florida Statue 1008.25) 1008.22 (6) (a)

# Y.C.'s Psychological Report from Dr. Kurt Wasser

## TESTS ADMINISTERED:
42. Review of Records and Private Report
Interviews
Classroom Observation
Conner's 3-Teacher and Self Report Forms
Kaufman Test of Educational Achievement – Second Edition (KTEA-II)
Sentence Completion Test

43. Y.C. was evaluated November 16, 2010. We received the psychological report from Dr. Kurt Wasser December 6, 2010. According to the doctor, Y.C.'s updated reading achievement was within average range. He was demonstrating progress in reading fluency. Moreover, he was not considered eligible for a specific learning disability and language impediment.

44. Each state must ensure that FAPE is available to any child with disability who needs special education and related services even thought the child has not failed or been retained in a course and is advancing from grade to grade. 34C.F.R 300.101 ©

## Medical Evaluation from Dr. Robert T. Gonzalez

45. On December 14, 2010, we receive back the medical evaluation form for physically impaired by Dr. Robert T. Gonzalez MD F.A.A.P., PA. This form was given by Dr. Wasser to be filled by Y.C.'s Pediatrician Dr. Gonzalez.

## Dr. Arturo CID's Letter of Treatment

36

46. We receive in January 5th 2011 a letter of treatment done by Dr. Arturo A. CID, LCSW, BCD; Who had seen Y.C. August 10, 2010. This letter was a report to be given Broward County School Board. He gave his input in Y.C.'s treatment and encouraged the School to help Y.C. with any available resources.

## Discriminatory Evaluation

47. January 7, 2011 we received a data analysis work sheet to determine Y.C.'s eligibility for Specific Learning Disability. After the analysis, they determined that he did not qualify. However, he did qualify due to all the data we have presented up to this time and they deliberately neglected to mention that.

48. The December 20th, 2013 United States Department of Education Office of Special Education and Rehabilitative Services Memorandum states that:

49. Under 34 CFR 300.307, a State must adopt, consistent with 34 CFR 300. 309, criteria for determining whether a child has an SLD as defined in 34 CFR 300.8(c)(10). "No assessment in isolation is sufficient to indicate that a child has an SLD including reading fluency in the list of areas to be considered when determining whether a child has an SLD."

**The student meets the following criteria:**

1. The student does not achieve adequately for his/her age or to meet State-approved grade-level standards in one or more of the areas identified below, when provided with experiences and instruction for his/her age or State-approved grade-level standards;
Check all areas that apply:
[ ] Basic reading skills [ ] Reading fluency [ ] Reading comprehension [ ] Listening comprehension
[ ] Oral expression [ ] Written expression [ ] Math calculation [ ] Math problem solving

2. **AND** the student's rate of progress is insufficient OR the student requires sustained and substantial effort to close the gap with typical peers or academic expectations for the chronological age or grade level in which the student is currently enrolled;
[ ] Yes [X] No

3. **AND** the results from additional comprehensive evaluation measures (if requested) verify that the under-achievement noted above is the result of a disorder in one or more of the basic learning processes affecting the ability to listen, speak, read, write, spell, or do mathematics.
[ ] Yes [X] No

**The team has determined that the learning problems are primarily the result of:**
[ ] Yes [X] No   visual, hearing, or motor disability
[ ] Yes [X] No   intellectual disability
[ ] Yes [X] No   emotional/behavioral disability
[ ] Yes [X] No   irregular pattern of attendance or high mobility rate
[ ] Yes [X] No   cultural factors
[ ] Yes [X] No   environmental or economic factors
[ ] Yes [X] No   classroom behavior
[ ] Yes [X] No   Limited English Proficiency
[ ] Yes [ ] No   Other (specify):

37

After looking at all this, you can see that there was deliberate negligence on Y.C.'s special needs. This is a discriminatory evaluation.

Educationally relevant medical findings, if any:
none

**The attached evaluation reports and records contain documentation of the following:**

[  ] A body of evidence that demonstrates:
    1. academic skill/performance deficits (i.e., results from classroom/district/state assessments)
    2. insufficient rate of progress in response to scientific, research-based interventions in the area(s) identified above (see attached Intervention Records and progress monitoring graphs)
    3. the results from additional comprehensive evaluation measures (if requested) verify that the underachievement noted above is the result of a disorder in one or more of the basic learning processes affecting the ability to listen, speak, read, write, spell, or do mathematics (see attached psycho-educational report)

[X] An observation of the student's academic performance in the area(s) of difficulty in the learning environment, including the relevant behavior and relationship to the student's academic functioning

[X] The instructional interventions used (see attached Intervention Records)

[X] Documentation that the parents were notified about:
    [X] the amount and nature of student performance data collected and the general education services provided (see attached Intervention Records)
    [X] interventions for increasing the student's rate of progress (see attached Intervention Records)
    [X] results of repeated assessments of student's progress (see attached Intervention Records)

[  ] Yes [X] No   The student demonstrates a need for special education services due to SLD.

50. The second page of this document, it says clearly below the following: "Educationally relevant medical findings, if any: None." However, at this time there had already been a diagnosis by Dr. Robert T. Gonzalez diagnosing and describing that he has ADHD. This Medical Evaluation form was completed on 12/14/2010 and was given to the school. See figure 3 for the Medical Evaluation Form for Attention-Deficit/Hyperactivity Disorder completed by Dr.

38

Gonzalez below figure 2.

Educationally relevant medical findings, if any:
none


**The attached evaluation reports and records contain documentation of the following:**

[ ] A body of evidence that demonstrates:
    1. academic skill/performance deficits (i.e., results from classroom/district/state assessments)
    2. insufficient rate of progress in response to scientific, research-based interventions in the area(s) identified above (see attached Intervention Records and progress monitoring graphs)
    3. the results from additional comprehensive evaluation measures (if requested) verify that the underachievement noted above is the result of a disorder in one or more of the basic learning processes affecting the ability to listen, speak, read, write, spell, or do mathematics (see attached psycho-educational report)

[X] An observation of the student's academic performance in the area(s) of difficulty in the learning environment, including the relevant behavior and relationship to the student's academic functioning

[X] The instructional interventions used (see attached Intervention Records)

[X] Documentation that the parents were notified about:
    [X] the amount and nature of student performance data collected and the general education services provided (see attached Intervention Records)
    [X] interventions for increasing the student's rate of progress (see attached Intervention Records)
    [X] results of repeated assessments of student's progress (see attached Intervention Records)


[ ] Yes [X] No   The student demonstrates a need for special education services due to SLD.

39

**Medical Evaluation Form for Physically Impaired**

Name of Student: Yanni Castillo                                    Birthdate: 08/25/1995

Parent or Guardian: Manuel Castillo

Address: Same As Above .                                    Phone: 9544321956

### PHYSICIAN COMPLETES THIS SECTION

Check the description of the condition that applies to this patient:

( )   an orthopedic impairment (severe skeletal, muscular or neuromuscular impairment) resulting from congenital anomalies (including, but not limited to, skeletal deformity or spina bifita) and impairments from other causes (including, but not limited to, cerebral palsy or amputations)

(X)   other health impairment resulting in limited strength, vitality or alertness (including, but not limited to, asthma, AD/HD, Tourette syndrome, diabetes, epilepsy, a heart condition, hemophilia, lead poisoning, leukemia nephritis, rheumatic fever, sickle cell anemia, and acquired brain injury)

( )   a traumatic brain injury (acquired open or closed head injury) from an external physical force resulting in impairments in one or more of the following: cognition, language, memory, attention, reasoning, abstract thinking, judgment, problem solving, sensory, perceptual and motor abilities, psychosocial behavior, physical functions, information processing, or speech. The term includes anoxia due to trauma, but not injuries that are congenital, degenerative, or induced by birth trauma

Diagnose and describe the condition checked above:

_ADHD_

Date of Onset: _Undetermined_

Check if the condition is:   Stable ( )   Progressive ( )   Chronic (X)   Acute ( )

Describe any medical implications for instruction such as medication and possible side effects, plans for future surgery or hospitalization and recuperative plans, limits or restrictions to school activities, catheterization:

_Ritalin 15 mg XR once in the morning_

## The Progress Monitor Plan

51. According to the Progress Monitor report dated November 2, 2010 Y.C. has deficit in Reading, comprehension, fluency, Math, algebra, measurement and number sense, concept and operations.

52. There were no reports that Y.C. was diagnosed with having ADHD (34 C.F.R. 34.307). A state must adopt and be consistent with 300.309 criteria for determining whether a child has a specific learning disability as defined by 300.8(c)(10).

40

Based on initial screening criteria in the two (2) academic areas of reading and mathematics, your child has been identified as below grade level in one or more of these academic areas. The screening criteria used to determine this status were formal assessments. In order to address these identified deficiencies, a Progress Monitoring Plan (PMP) has been generated by your child's school in the areas below.

The information provided is the Progress Monitoring Plan for your child's grade at his/her school. Your child MAY/MAY NOT have a weakness(es) and intervention(s) program(s) planned in all the areas documented. You are welcome to refer to Virtual Counselor for more specific information pertaining to which weakness(es) within reading and/or mathematics directly relates to your child. If you require additional information, please request a parent/guardian teacher conference.

| Instruction | Weakness | Screening | Intervention |
|---|---|---|---|
| Reading | Comprehension | Florida Assessments for instruction in Reading (FAIR) | Edge |
| | Fluency | Florida Oral Reading Fluency (FORF) probes | Intensive Strategy/Skill Instruction |
| Math | Algebra | FCAT SSS Subtest Points Earned | Intensive Strategy/Skill Instruction |
| | Measurement | FCAT SSS Subtest Points Earned | Intensive Strategy/Skill Instruction |
| | Number Sense, Concepts, and Operations | FCAT SSS Subtest Points Earned | Intensive Strategy/Skill Instruction |

There are specific promotion criteria that students must meet to be promoted. These criteria apply to ALL students, including students with exceptionalities. If promotion criteria are not met, your child will be retained. Limited exceptions exist for some students who are English language learners and for students who have been previously retained. Retained third grade students will have an opportunity for mid-year promotion.

According to Florida Statute 1008.25 (Public school student progression, remedial instruction, reporting requirements) the school in which the student is enrolled must develop (in consultation with the student's parent) and implement a progress monitoring plan designed to assist the student in meeting state and district expectations for proficiency

A PMP is designed to assist students to focus on the skills and concepts expected at his/her grade level. A student who has been given a PMP in reading and/or mathematics may have their regular curriculum suspended in order to provide intensive academic instruction.

53. Both IDEA 614 (b)(2)(b) law and the regulations 34 C.F.R 300.304(b)(2) state in conducting its evaluation the agency must not use any single measure or assessment as the sole criterion for determining whether a child is a child with a disability and for determining an appropriate educational program for the child.

## The 504 Plan

54. On February 24, 2011 in a letter, we gave the assistant principal Vivian Suarez a request for a section 504 plan accommodation. By March 8, we receive a letter for a meeting for 504 ADA to meet at March 29, 2011 at 7:30 AM and review Y.C.'s Records.

55. On March 29, 2011 we gave a 2 page letter of Y.C.'s Portrait and diagnosed of ADHD. The team meeting integrated of School Psychologist Kurt Wasser , Guidance counselor  Ovida Ross and Guadalupe Prieto, School Social Worker Linda Friedman and Vivian Suarez who signed but was not present.  The team determined that Y.C. was not eligible for accommodations under section 504.  S The reasons were that Y.C. doesn't have any problem in academic social behavior according to the teachers, And that the student does not exhibit a substantial limitation in one or more major life activities.

41

## THE SCHOOL BOARD OF BROWARD COUNTY, FLORIDA

### Section 504/ADA
### SECTION 504 TEAM ACTION FORM

3-29-11

Date: 3/29/11

Student's Name: _____ School: Hallandale

Grade, Team or Subject: 10  Date Of Birth: 8-25-94 Sex: male C.A.: _____

Parents: Mery Castillo  Phone (Home): 4/432-195 Work: 4/237-4696

Teacher (s): Santos, Chambers, Nathanson, Thompson

**1. State reason for action:**

Denial of 504 eligibility

**2. Nature and documentation of existing disability:**

ADHD

**3. Additional information including any interventions and outcomes to date:**

Student is able to access Curriculum, according to Academic/Social Behavioral information from teachers.

### ELIGIBILITY (Select A or B)

**A) Ineligible 504/ADA**

Current information indicates that this student is **not** eligible for accommodations under Section 504 because:

[ ] The student does not exhibit a Section 504/ADA disability, **OR**

[✓] The student does not exhibit a substantial limitation in one or more major life activities.

Alternative Actions:

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**B) Eligible 504/ADA**

Current information indicates that this student **is** eligible for a Section 504/ADA Plan because:

[ ] The documents support that this student has a disability, **AND**

[ ] The student exhibits a substantial limitation in one or more major life activities.

**Signatures of persons in attendance at eligibility determination meeting:**

School Psychologist _____ Teacher _____

Guidance Counselor _____ School Social Worker _____

Parent(s)/Guardian _____ Administrator _____

ESE Specialist _____ Section 504/ADA Liaison _____

Other: _____ Other: _____

Page 1 of 2

23

56. In the same day in Pinnacle he had 2 D's, one in world history and the other one in Draw/Painting.  The team didn't consider the ADHD diagnosis by expert Dr. Silverman, and Robert T. Gonzalez Private counseling with Dr. Arturo CID, Progress Monitor Plan where he was identified of having deficiency of reading (Comprehension, Fluency) and Math (Algebra, Measurement, number sense, concepts and operations), FCAT and Benchmark assessment.  It

42

was a violation of Section 504 of the Rehabilitation Act of 1973 29 U.S.C 794. Title II of the Americans with Disabilities Act of 1990 (ADA)

57. Y.C. continued to have academic problems even though, he was helped by a tutor.  To exemplify this, on April 4th, 2011 he scored 47% in his **student subtest information**.  In addition, we sent an email to Ms. Tania Santos (Algebra 1B) to ask for her help since Y.C. didn't understand the work.  Ms. Santos explained that Y.C. had potential; but he needed to complete his notes to study for his quizzes.  Y.C. had 54% in her class.  Mrs. Santos was doing well in Academic and social behavioral.  Her input was used to deny Y.C. a 504 Eligibility along with other teachers.

## Y.C. Received No English Classes in the 10th Grade after failing all of 9th Grade

58. Y.C. didn't receive any English classes in 10th grade.  Even though he failed English I in 9th grade in charter High school.  Consequently, we enrolled him in English I Virtual Class.  He was only able to finish half of class.  It was clearly that his other classes were going to suffer more because he didn't have any accommodations.

## Legal Aid of Broward County (July 2011)

59. After all those years that we tried to get a proper education for our son we found ourselves very frustrated.  Therefore, we decided to get legal presentation outside the school .  We found legal aid of Broward County, INC.  This organization which is funded by federal state and local governments; the Florida bar, local bar association and special grants.

60. On July 1st 2011, Mrs. Rochelle Marcus attorney in education law took our case.  The first thing Ms. Marcus did was to have Y.C. be evaluated in the areas of speech, language and psychological evaluation.   Y.C. was evaluated at "Kids Spot" speech physical occupational therapy on July 1st, 2011 by Danielle Monterrey M.S'CF SLF+P.  Once again he showed the same major concerns: Reading comprehension, expressive and receptive language. Mrs. Marcus also sent us to obtain an independent psychological evaluation from Nova Southeastern University.

## 11th Grade at Charles W. Flanagan High School (August 2011- June 2012)

61. In August 2011, Y.C. started 11th grade at Charles W. Flanagan High School without any help or support from his teachers.  In addition, they were not posting anything in the online virtual grade system called Pinnacle for a total of 2 weeks already.  Consequently, I emailed the all of Y.C.'s teachers to inform myself about his progress.

62. Ms. Leona Sturrup, (Y.C.'s Improving Reading 1 Teacher) responded back in her email that Y.C. loses focus quite often, is inconsistent with taking class notes for a particular high valued assignment and not completing the assignment could drop his overall grade to an F.  Now if we would have received this information on Pinnacle, Y.C. wouldn't of had to receive an F for the

43

class up until the grading period of 63. September 27, 2011. At the end of the 1st quarter, Y.C. received a D because of this lack of proper attention. (Scan 1st Quarter Here)

**CHARLES W FLANAGAN HIGH**

Student Assignment Summary

Castillo, Yanni

| Description | | | Course | Section | Term |
|---|---|---|---|---|---|
| 01-AMER HISTORY | | | 2100310L | 601 | 1st Quarter |
| **Assignment** | **Due Date** | **Category** | **Points Possible** | **Grade** | **Comments** |
| STUDENT CODE OF CONDUCT | 2011-08-22 | | 0 | 1 A | |
| STUDENT PROFILE FORM | 2011-08-22 | | 50 | 0 F | |
| 1VIRTUAL COUNSELOR SCAVENGER HUNT | 2011-08-23 | | 200 | 166 B | |
| CLASS INTRODUCTIONS | 2011-08-24 | | 50 | 50 A | |
| CLASS REQUIREMENTS | 2011-08-24 | | 50 | 0 F | |
| EMERGENGY CONTACT CARD | 2011-08-25 | | 0 | 1 A | |
| FLANAGAN POLICY ADDENDUM | 2011-08-25 | | 0 | 1 A | |
| CITIZENSHIP POSTTEST | 2011-08-30 | | 200 | 192 A | |
| PRESIDENTIAL KNOWLEDGE POSTTEST | 2011-09-06 | | 150 | 9 F | |

44

| Assignment | Due Date | Category | Points Possible | Grade | Comments |
|---|---|---|---|---|---|
| DOCUMENT BASED QUESTIONS (DBQ) JOURNAL. WEEK 1 - 3 | 2011-09-09 | | 300 | 150F | |
| AMERICA REMEMBERS | 2011-09-12 | | 200 | 165B | |
| STATES AND CAPITALS POSTTEST | 2011-09-15 | | 200 | 136D+ | |
| DBQ WEEK # 4 | 2011-09-16 | | 100 | 75 C | |
| CONSTITUTION DAY HANDOUT | 2011-09-16 | | 200 | 80 F | |
| UNDERGROUND RAILROAD | 2011-09-20 | | 200 | 145C | |
| DBQ WEEK # 5 | 2011-09-23 | | 100 | 35 F | |
| DBQ WEEK # 6 | 2011-09-30 | | 100 | | |

| Category | Weight | | Percent | Letter |
|---|---|---|---|---|
| | Grade: | | 60%/ D | |

| Comments |
|---|
| No Comments. |

64. Ms. Jetta Warner, American History Teacher, replied that Y.C. was turning in his work, however, he doesn't do all that is requested or follow the rubric.  His grade up to September 27 was an F. His final grade for the first quarter was an A.

65. The School Board of Broward County, Florida Policy 6306 Homework goals are that very teacher maintain a website and all homework assignments be listed., so , students and parents can monitor the student's progress and weaknesses.  Since, Y.C. was not being given the full and proper support his Progress Monitor Plan (PMP) entailed him, Y.C. was not able to do well in his Improved Reading

## School Department of Education Memorandum for All District Superintendents

66. On June 30th, 2006 The School Department of Education issued a memorandum to all district superintendents to inform them about a recent legislative change pertaining to Progress Monitor Plans (PMP).  These changes were made during the 2006 legislative session as part of a House Bill 7087 and became effective upon being signed into law.   In this memo the Department of Education let the superintendents know that if the students had been identified as having a deficiency in reading and Math should be helped to meet desired level of performance.

45

67. Additionally, this section allows that district school boards may require low performance students to attend remediation program held before or after regular school hours; or during the summer if transportation is provided. Well, this remediation were never offered to our son. (Scan Memo Here)

**Treatment Summary by Dr. Arturo A CID, LCSW; BCD**

68. Dr. Arturo A. CID Recommended that Y.C. continue with Therapy and also stated that accommodations and additional intervention is recommended at school. Y.C. as deficit in reading comprehension and that a more specific description of problem areas will describe at the end of Nova University's evaluation is completed.

69. On November 28, 2011, We sent an email to our lawyer Mrs. Rochelle Marcus. In this email we let her know that some teachers were not posting assignments or grades for the first weeks of November like Mr. Cairns Raymond and Mr. Simon Donald. Ms. Jetta Warner was the only one who would post the assignments correctly and on time.

**Abuse of Power**

70. My husband and I were very dissatisfied with Ms. Sturrup Leona's abuse of power. An incident occurred with Y.C. where he had a group class assignment regarding analogies and each student had to turn his or her own worksheet.

71. Y.C. didn't have any incorrect answers on his own personal worksheet and was later accused by Ms. Sturrup to have been cheating. When Y.C. asked why she thought that, she replied, "Not even my brightest students got all questions right." Y.C. asked her, "What are you trying to say?" Then she said "I have known you for weeks, I know your reading levels and I know your capabilities. You didn't get this all right. "

72. She then made him take another test that was much harder where he scored a C instead of the A he so deserved. Then she assumed that Y.C. was cheating on this one as well... We spent a lot of time and money to get Y.C. therapies to raise his self esteem.

**Flanagan Sent Us Y.C.'s New and Inappropriate Schedule on December 13, 2011**

73. Right before the Christmas break, Flanagan sent us Y.C.'s inappropriate English schedule for the following semester.



74. As you can see, there is an English III Course that Y.C. is due to take.  However, this does not make any sense in terms of an education that meets quality because during his Sophomore year he only took ½ of English I.

## NOVA EVALUATION RECOMMENDATION

75. On December 19, 2011, we received the results of the psycho educational evaluation performed by Yaslaine Jimenez MS and supervised by Dr. Ralph E. Cash P. H. D. NCSP Licensed Psychologist. Once again Y.C. had trouble in the same areas.  In fact, the test in the area of Oral language he scored as an average individual of 8 years, 7 months of age.  In the oral expression, he scored as an individual who was of 10 years, 9 months old.  In listening comprehension involving attention to communication and verbal comprehension Y.C.'s cluster score was a 79. This is the average of a 9 years, 7 months old student.  Thus, tasks that measure listening and oral comprehension above a 12 year age equivalent will most likely prove to be very difficult for him.

76. Dr. Ralph E. Cash, Ph. D. recommendations were that he should receive intensive language training in English to help him with his oral expression and comprehension for the English language.  He also stated that Y.C. would need 75-100% additional time depending on the reading demands of the assignment.

## Beginning of the 2nd Semester of School YEAR 2011-2012

77. On January 2, Flanagan sent us the new schedule for his classes and teacher for the year 2011-2012.  In this time, they chose English 3 without our approval or decision.  They chose English 3, even though he didn't finish English I or even begin or finish English 2.  In addition, he was also supposed to be taking math and reading comprehension because Y.C. was identified by Progress Monitor Plan (PMP) as having weakness in reading and math.  They didn't follow the instruction form the P.M.P. for the year 2011 – 2012.

78. On January 3rds Tuesday Meeting for his new classes, the classes were cleared out and we handed in our new Nova Evaluation that was completed.   We also received a Parent's Consent Notice:  Screening/Formal Individual Evaluation for future evaluations that were going to be conducted by Charles W. Flanagan High School.

79. On January 11th, 2012, The Parent's Participation Meeting handout was given out describing the meeting that was to be taking place on February 9th 2012. This was going to be an evaluation of information that determines the eligibility for Exceptional Student Education (ESE).

## Email to Mrs. Marcus Regarding Illegal Grade Changes from Ms. Sturrup

47

80. Un January 20th, 2012 I emailed Mrs. Marcus (Legal Aid) because based on the previous behaviors from dealing with Charles W. Flanagan, I thought that some teachers may alter the grades before the IEP meeting and I was right. Mrs. Leona Stirrup changed Y.C.'s grades from F's to A's. The dates changed were on December 6th, December 12th and January 9th. See exhibit __ for more details regarding this matter. We have evidence from Pinnacle and email notifications supporting this statement.

81. Moreover, I told Mrs. Marcus that such behavior must stop. Altering grades can change the future of a student by allowing them to receive a diploma but then not have the adequete skill level to succeed in college. This is why some students may continue to drop out of school. This behavior is punishable by law under the Disciplinary Guidelines 6B -11.007, altering student/school records in violation of paragraph  6B - 1.006(3)(f),(4)(b), 5(a) Principles of Professional Conduct. Violation: the Senate Bill 1712, the Ethics in Education Act. This legislation became effective July 1, 2008.

## PSCYHOLOGICAL ADDENDUM DID NOT CONSIDER Y.C. ELIGBLE FOR SPECIFIC LEARNING DISABILITY OR THE 504 PLAN

82. On January 23, 2012 we received a Psychological Addendum from Ms. Maria Bosque Blanco, the psychologist from Charles W. Flanagan High School. She said that Y.C. was updated in month of November 2012 and at that time his reading achievement was within the average range. He was demonstrating progress in reading fluency and was not considered eligible for specific learning Disabled or the 504 Plan.

83. However, on November 2, 2010, the Progress Monitor Plan (P.M.P.) Evidence showed that Y.C. in two initial screening criteria's he was below grade level. He had deficiencies in reading comprehension, fluency, Algebra, measurement, number sense and concepts and operations. Ms. Maria Bosque said that Y.C. FCAT scores in March 2010 were level 1 in both Reading and Math. As a result, he was placed in intensive reading class, which is taken to increase the students reading comprehension level.

84. Data from the Tier III interventions suggest that he has improved. Ms. Maria Bosque Blanco forgot he was in Intensive Reading from 10 years from 2001 – 2012. Y.C. has been identified as below grade level in reading and math and interventions suggest vocabulary through Morpheus and tutoring in math. Y.C.'s teachers from the first semester from the 2011 – 2012 school year were interviewed by Ms. Maria Bosque Blanco.

85. In this time, Y.C.'s intensive reading grade was a D. Evidence of this, can be found on Pinnacle, which we will provide in the evidence booklet. (Scan)

## Speech and Language Evaluation

86. On January 27th, 2012, the eligibility of determination of Language Impaired (IL) base in

48

evaluation and data was denied team members:

- Mary Hood (LEA Representative)
- Leona Sturrup (General Education Teacher)
- Marsha Decker (ESE Teacher)
- Sherry L. Wilson (Speech Language Pathologist)
- Maria Bosque (School Psychologist Carol Steelman Representative area Program Specialist)

87. Disagreed:

- Rochelle Marcus Legal Aid
- M. C. Mother
- M.C. Husband

**Evidence the School Overlooked**

88. 2001 – 2011 – 11 years in Intensive Reading

89. 2005 – 2011 7 years in level 1 or 2 due his reading deficiencies is critical to realize the important roles that Speed Language Pathologist (SLP) play in reading instruction and intervention considering their knowledge between reading and language skills.  (CS/SB 364 IAC).

90. November 2, 2010 – 2011 – Progress Monitor Plan, Weakness Reading Comprehension

91. November 17th 2011-2012 – P.M.P. showed weakness in Reading Comprehension, Vocabulary through Morphemes.      F.S. 100.825

92. Data Analysis Worksheet- Specific Learning Disabilities (SLD) show, Y.C. meet the following criteria Reading fluency, listening comprehension and oral expression

93. Written Summary of groups analysis Language Impediment (LI) - Apply only two areas: Reading Comprehension and listening comprehension

**Evaluations Completed Up to this Time**

| Date | Evaluation | Evaluator | Description |
|------|-----------|-----------|-------------|
| 07/09/2010 | Psychological Evaluation | **Dr. Marvin Silverman** Ed.D. P.A. Licensed School Psychologist #SS244 10000 Stirling Road # 6 Cooper City, Fl 33024 | We had this evaluation done on our own behalf.  The Charter School System did not evaluate Y.C. at any time even after we had requested it. |
| 11/16/2010 | Psychological Evaluation | **Flanagan High School** Kurt Wasser | |

49

| 07/08/2011 | Speech Therapy Evaluation | *Kid's Spot* Danielle Monterrey M. E. | |
| 10/01/2011 | Psycho Educational Evaluation | *Nova Southeastern University* Supervisor Ralph E. Cash PH Licensed Psychologist | |
| 01/24/2012 | Language Evaluation | *Charles W. Flanagan High School*, Ms. Sherry Wilson | |

Q1

EXCEPTIONAL STUDENT EDUCATION ELIGIBILTY FOR STUDENTS WITH LANGUAGE IMPAIRMENTS

94. Statutory and Regulatory Citations

34 CFR §§300.8, 300.34, and 300.306

Section 1003.01 and 1003.57, F.S.

Rule 6A-6.030121, F.A.C.

95. 6A-6.030121 **Exceptional Student Education Eligibility for Students with Language Impairments and Qualifications and Responsibilities for the Speech-Language Pathologists Providing Language Services.**

96. (7) Criteria for eligibility for students in kindergarten through grade 12. A student meets the eligibility criteria as a student with language impairment in need of exceptional student education if all of the following criteria are met:

97. (a) Due to deficits in the student's language skills, the student does not perform and/or function adequately for the student's chronological age or to meet grade-level standards as adopted in Rule 6A-1.09401. F.A.C., in one or more of the following areas, when provided with learning experiences and instruction appropriate for the student's chronological age or grade:

1. Oral expression

2. Listening comprehension

3. Social interaction

4. Written expression

5. Phonological processing; or

6. Reading comprehension

*50*

| Test Date | Test Name | Subtest | Score |
|---|---|---|---|
| 01/09/2010 | Writing Response Prompt | Expository | 1 |
| 03/01/2011 | Writing Test | Expository Writing | 0 |
| 11/01/2012 | Writing | SAT | 270 |

## Three Federal Laws

98. The individual with Disabilities Act (IDEA) Title II of the American with Disabilities Act of 1.990 (Title II) and section 504 of the Rehabilitation Act of 1973 (Section 504) address the obligations of all public schools to meet the communication needs of students with disabilities. See Dear colleague November 12, 2014 U.S. Department of Justice and U.S. Department of Education Civil Rights Division

January 29, 2012 English Teacher

99. Email Ms. Julie Hue about Y.C.'s Reading deficiencies and the importance to receive training in English to help his oral expression and comprehension.

## February 2012

100. February 7, 2012: The Eye Center Recommends a reading evaluations for dyslexia.

101. February 09, 2012: The team considered approving eligibility for Language Impaired but rejected that option because the student did not meet eligibility criteria defined by *Special Programs and Procedures.*

102. February 09, 2012: Data analysis worksheet (SLD) Specific learning disabilities: Listening comprehension, oral expression and reading fluency, were missing an X on reading comprehension and written expression fill in.

## John M. McKay Scholarship

103. The John M. McKay for Students with disability program was enacted by the state legislature to provide parents with a choice for which school their child could attend. The student qualified for the program if the student was enrolled in preschool or higher grade level program for students with a disability in a public school in Florida during the previous school year and was present for the October and February FTE Surveys during that year.

104. Feb 15, 2012

Pinnacle's 3rd quarter showed an F in Y.C.'s English II class. English teacher Julie Hue.

Geometry D+ Teacher Wolneiwicz Scott

51

105. February 15, 2012 Page 3 IEP

**Notes from IEP**

106. Transition instruction, His mathematics teacher Wolneiwicz Scott also stated that he feels that Y.C. has a good grasp of the academic just need redirection at times.

The English Teacher reports that although Y.C. is capable, she has to frequently redirect him. At this time Y.C. has 4 F and 1 D and never was reported to me and more 2 weeks.  IEP Page 11 Support for School Personal (Special training or materials require or needed by staff)

107. No support is need for the duration of this IEP

108. Language was not considered for eligibility because R.T.I. data was not available.

109. <u>February 15, 2012: Matrix of Services Communication Level 3</u>

    1) Weekly intervention or assistance with oral language communication

    2) Weekly speech/language therapy instruction

110. <u>Learning Environment Level 3</u>

    1) Collaboration with family agencies and/or other providers.

## IEP Bullying

111. **English II Ms. Julie Hue 11th Grade (1/29/2012- 4/17/2012)**

| # | Page | Date | Evidence Source | Description |
|---|------|------|-----------------|-------------|
| 1 | 6 | 01/29/2012 | Email M.C. - Hue | Information Y.C. English 2 |
|   |   | 02/16/2012 | Email M.C. - Juliet | Y.C.'s Progress 4 Fs and one D. CC to Legal Aid Rochelle Marcus |
|   |   | 02/16/2012 | Pinnacle | Grade F in English |
|   |   | 02/16/2012 | Email Julie-M.C. | Did not see M.C's Email |
|   |   | 02/16/2012 | Email Marsha – M.C. | Y.C.'s Progress: Going over his grades |
|   |   | 02/17/2012 | Email Marsha – M.C. | Y.C.'s Progress |
| 2 | 2 | 02/21/2012 | Email M.C.-Decker | Accommodation |
|   |   | 02/29/2012 | Pinnacle | |
|   |   | | | |

52

| 3 | 1 | 04/17/2012 | Pinnacle | Vocabulary List |

## 112. Wolneiwicz Scott Geometry Teacher 11th Grade (02/09/2012 – 02/22/2012)

| # | Page | Date | Evidence Source | Description |
|---|---|---|---|---|
| | | 02/09/2012 | Pinnacle | Grade D |
| | | 02/15/2012 | Pinnacle | Grade D |
| | | 02/14/2012 | Email M.C. - Legal Aid Marcus | Teacher Mr. Wolniewicz Scott, *Classroom Bullying* |
| | | 02/22/2012 | Email Decker – M.C. | Teacher Geometry Change |

## 113. Mr. Eduardo Ajuz Geometry 11th Grade (02/27/2012 – 05/07/2012)

| # | Page | Date | Evidence Source | Description |
|---|---|---|---|---|
| 1 | 3 | 02/27/2012 | Pinnacle | Beginning Class Assignment with new Geometry Teacher2 F |
| | | 02/28/2012 | Email M.C. – Ajuz | Missing Assignments |
| | | 02/29/2012 | Pinnacle | Grade Change |
| 2 | 3 | 03/06/2012 | Pinnacle | Assignment Grade 0 F |
| | | 03/06/2012 | Email M.C. – Ajuz | Notebook Check |
| | | 03/07/2012 | Pinnacle | Grade Change |
| 3 | 2 | 03/19/2012 | Email M.C. – Ajuz | Missing Assignment |
| | | 03/19/2012 | Pinnacle | |
| 4 | 3 | 03/23/2012 | Pinnacle | Grade F |
| | | 03/23/2012 | Pinnacle | |
| | | 03/26/2012 | Email M.C. – Ajuz | Notebook Check |
| 5 | 1 | 04/02/2012 | Email Ajuz – M.C. | After 1 Month Mr. Ajuz Answered the Email |
| 6 | 2 | 04/23/2012 | Pinnacle | |
| | | 04/24/2012 | Pinnacle | Grade F |

53

| 7 | 3 | 05/07/2012 | Email M.C. | Missing Classes |
| | | 05/07/2012 | Email M.C. – Hood | Instructional Accommodation |
| | | 05/07/2012 | Email Hood – M.C. | Instructional Accommodation |

## Bullying

114. Bullying, harassment and discrimination from teachers and school staff.  The school staff observes without taking action to address the behavior.  Denial of FAPE for 12 years.

115. Florida Statutes  1006.147 (4)(5)(8)(9)(10) Bullying and Harassment Prohibited (4)(5)( 12/9/2013) By December 7, 2008, each school district shall adopt a policy prohibiting bullying and Harassment of any student or employee of a public K-12 educational Institution.  Each School District policy shall be in substantial conformity with the department of Education's model policy in subsection (5).

116. To assist school districts in developing policies prohibiting bullying and harassment, the Department of Education shall develop model policy that shall be provided to school districts no later than October 1 2008. Distribution of safe schools funds to a school district provided in the 2009-2010 General Appropriations Act is continued upon and payable to the school district upon the Department of Education Approval of the school districts bullying and harassing policy

1) See letters dear Colleague April 24, 2013

See United states Department of Education office for civil rights to clarify the basic principles of retaliation law.

2) Dear Colleague Letters the United States Department of Education office of special education and Rehabilitative services August 20, 2013.

117. This letter to provide an overview of a school district's responsibilities under individual with disabilities education act (IDEA) to address bullying of students with disabilities Director: Melody Musgrove, Ed.D

118. An act relation to bullying in the public school system: Amending.  1006. 147 F.S revising provisions prohibiting bullying or harassment.

119. This was sufficient evidence of pervasive severe harassment of Y.C. that created "an abusive educational environment."

120. May 9th 2012: Email to legal aid Ms. Rochelle Marcus

Meeting request regarding the extra training for teachers because not all of the accommodations written in the IEP were being used.

54

121. May 9, 2012

Email to M.C. from Legal Aid about the meeting request.

122. **May 24, 2012 IEP Meeting for Accommodations for the next School Year that was not going to have a Block Schedule anymore, but 7 classes like how Pembroke Pines Charter School had it. Before Flanagan would have the opportunity to receive 28 credits and now with the new schedule of 7 year long classes students would have the opportunity to only receive 24 credits and that's it. They are losing 4 credit opportunities so we wrote an email to Mrs. Rochelle Marcus on May 9, 2012 to explain this so we could then get Y.C. a computer with word processing capabilities and a voice recorder to help with his studies. Classes would now only have 50 minutes per class when before they would have an hour and a half, thus this makes Y.C. have to learn materials in class much harder. With all this workload IEP modifications and implementations would have to be crucial in order for Y.C. to succeed in school.**

123. Interview IEP. Review Accommodations new accommodation supplementary aids services begin on 05/24/2012

124. Other Daily/weekly reporting and collaboration with the parent frequency 5 times /week location sup aid all classes.

125. Advanced notice of the test and projects both orally and visually frequency 5 times/week location. Sup Aid. All Classes.

126. May 25th 2012 - Email co-enrolled summer program from M.C. to Ms. Mary Hood

127. May 29th 2012 - Subject Co- Enrolled summer program from Mary: Hood to M.C.

128. May 30th, 2012 Subject: Y.C. Apex course From M.C. To: Mary Hood

**Summer with Cooper City Adult Education Program July 2, 2012**

129. June 13 – 18 – 21 - I received a message from Flanagan from Assistant Principal Mary Diarmes informing me that Y.C classes have been newly changed from the ones already chosen from the IEP team

130. June 25 2012 - Y.C was enrolled in a co-enrolled program in Cooper City at night to finish ½ of English 1 that was needed. The cooper city English teacher Natalie M. Flaten informed us that the IEP and accommodations was not provided at night time, only in the morning. (See e-mail sent to legal aid Rochelle Z. Marcus) Y.C. was discriminated against and Cooper City Adult Education. The Florida Statutes XLVIII 1000.5 (Discrimination against students and employees in the Florida K-20 public education system prohibited: equality of access required.)

131. August 7 2012 - I kept sending emails to legal aid to dispute Flanagan about Y.C.'s new

'55

schedule.

132. <u>August 14 2012-</u> ESE Specialist Mary A. Hood sent a e-mail with copy Christina Pellicer (guidance counselor) informing that Y.C.'s schedule was completed and specifically stated that Research I was English III  and confirmed with his guidance counselor that his schedule was correct.

133. <u>August 16 2012-</u> Mary Hood sent an email saying that Y.C.'s "schedule has been refined and he's good to go. I will follow up on the Tech Assist within the next couple of weeks." Tech assist never came.

134. <u>August 21 2012-</u> I sent an e-mail to legal aid and found that Y.C. instead of being enrolled in English III, he was enrolled in a course called Research 1 Course Number 17003000. Flanagan placed Y.C. in that course to put him on Virtual counselor inside school during school hours. After researching the course he have found that it is not English III, it's only counts as an elective and is not count as a high school credit requirements.

## **Year 2012 – 2013**

### 135. **Ms. Nancy Gorman Ceramics 12th Grade (08/30/2012 – 12/19/2012)**

| # | Page | Date | Evidence Source | Description |
|---|------|------|-----------------|-------------|
| 1 | 1 | 08/30/2012 | Email | |
| 2 | 1 | 08/30/2012 | Email Nancy | Updated |
| 3 | | 10/15/2012 | Email M.C. | |
| 4 | | 10/15/2012 | Email Nancy | Updated |
| 5 | | 10/16/2012 | Pinnacle | |
| 6 | | 10/16/2012 | Pinnacle | Grade F Project |
| 7 | | 10/16/2012 | Email M.C. | Project –copy IEP |
| 8 | | 10/17/2012 | Email Nancy | Project Error on Pinnacle |
| | | 10/23/2012 | Pinnacle | Grade Changes |
| 9 | 6 | 10/29/2012 | | |
| | | 10/29/2012 | | |
| | | 10/29/2012 | Email M.C. | Pinnacle Error |
| | | 10/30/2012 | Email Nancy | Pinnacle Error |
| | | | | |
| 10 | | 11/13/2012 | Pinnacle | |
| 11 | | 11/13/2012 | Email | Assignment |
| | | 11/14/2012 | Email Nancy | |
| | | 12/19/2012 | Pinnacle | Update after 20 days with grade F |

### 136. **Mrs. Vicky Helms English III (08/30/2012 – 12/18/2012)**

| # | Page | Date | Evidence Source | Description |
|---|------|------|-----------------|-------------|

56

| | | Date | Source | Description |
|---|---|---|---|---|
| 1 | 2 | 08/30/2012 | Email M.C. | Family dinner |
| | 2 | 08/30/2012 | Email Ms. Helms | |
| 2 | 5 | 09/01/2012 | Pinnacle | Grade change F |
| | | 09/04/2012 | Ms. Decker Grade Book | |
| | | 09/05/2012 | Pinnacle | Grade Change D |
| | | 09/10/2012 | Pinnacle | Notebook Grade D |
| | | 09/10/2012 | Email M.C. | Accommodations |
| 3 | 3 | 09/15/2012 | Pinnacle | FCAT D |
| | | 09/15/2012 | Email M.C. | Y.C's Progress |
| | | 09/15/2012 | Email Vicky | Y.C's Progress she has 150 students in class |
| 4 | 3 | 09/19/2012 | Pinnacle | FCAT D |
| | | 09/20/2012 | Email M.C. to Ms. Decker | English 3 Performance All D |
| | | 09/21/2012 | Email Ms. Decker | FCAT: He wasted his time, English 3 Performance |
| 5 | 5 | 09/24/2012 | Pinnacle | |
| | | 09/26/2012 | Pinnacle | FCAT Focus #3 Grade was a D |
| | | 09/27/2012 | Email M.C. | His Friend saw that Y.C's score on the computer |
| | | 09/27/2012 | Email Vicky | Test Not Accommodated |
| | | 09/30/2012 | Email Legal Aid | Y.C's Performance in English 3 |
| 6 | 5 | 10/01/2012 | Pinnacle | |
| | | 10/02/2012 | Pinnacle | |
| | | 10/04/2012 | Email M.C. | FCAT Retake Clarification with Ms. Decker |
| | | 10/04/2012 | Email Decker | Her Response |
| | | 10/07/2012 | Email Legal Aid Ms. Marcus | Rochelle Marcus and Update |
| 7 | 4 | 10/16/2012 | Pinnacle | In Pinnacle October 5 – October 16th |
| | | 10/16/2012 | Email M.C. | Y.C. Update |
| | | 10/16/2012 | Email Vicky | Update |
| | | 10/24/2012 | Pinnacle | Sept, Oct only FCAT |
| 8 | 3 | 11/08/2012 | Pinnacle | |
| | | 11/09/2012 | Email M.C. | Unexcused Absence |
| | | 11/09/2012 | Email Vicky | Try Let Me Know |

57

| | | | | |
|---|---|---|---|---|
| 9 | | 11/19/2012 | Pinnacle | Quiz D |
| | | 11/20/2012 | Email M.C. | Y.C. Quiz |
| | | 11/20/2012 | Email Vicky | Criticize Accommodations |
| | | 11/20/2012 | Email M.C. to Marcus | Email Accommodations for Y.C. |
| | | 11/20/2012 | Rochelle Email Legal Aid | Answer |
| | | 11/21/2012 | Email M.C. | Y.C.'s Quiz |
| | | 11/23/2012 | Pinnacle | |
| | | | | |
| 10 | | 12/13/2012 | Pinnacle | F on Quiz |
| | | 12/13/2012 | Email M.C. | Y.C. Absence |
| | | 12/13/2012 | Email Vicky | Answers and doesn't provide accommodations |
| | | 12/13/2012 | Email M.C. - Decker | Helms lack of adherence to Y.C.'s IEP refuses a tape recording of Require Reading |
| | | 12/17/2012 | M.C. – Decker Email | No answer to the Email |
| | | 12/18/2012 | Email from Ms. Decker | Address this with Ms. Hood |
| | | 12/18/2012 | Email Legal Aid | Information regarding what happened with Ms. Helms |
| | | | | |
| 11 | | 12/18/2012 | Pinnacle | Grade Change on Quiz |

137. **Mr. Robert Zeller English IV (09/03/2012 – 12/13/2012)**

| # | Page | Date | Evidence Source | Description |
|---|---|---|---|---|
| 1 | 8 | 09/03/2012 | Email Zeller | Greeting Y.C. Parents |
| | | 09/04/2012 | Email Zeller M.C. | Ms. Decker tells us that they were aware of Y.C.'s situation |
| | | 09/10/2012 | Email Zeller | In Ms. Decker told us that Y.C. would socialize and never get the work done |
| | | 09/10/2012 | Email Marsha M.C. | Y.C. needs to go to support |
| | | 09/11/2012 | Decker to M.C. | She wrote to Zeller |
| | | 10/16/2012 | M.C. Zeller | Y.C. Update |
| | | 10/17/2012 | Zeller Pinnacle | Update |
| | | 10/19/2012 | Pinnacle | |
| | | | | |
| 2 | 7 | 10/19/2012 | M.C. Zeller | Class work assignment not known |
| | | 10/19/2012 | | Did not inform Y.C. of the assignment |
| | | 10/23/2012 | Pinnacle | Oct 19 – 23 with no updated post |
| | | 11/02/2012 | Pinnacle | Make Up Work |

58

|  |  | 11/04/2012 | Email |  |
|--|--|------------|-------|--|
|  |  | 12/13/2012 | Pinnacle | Grade |
|  |  | 12/13/2012 | Email M.C. | Asking for a Copy |

## 138. **Mr. John O'Bryan** <u>**Intro to Information and Technology (09/03/2012 – 12/21/2012)**</u>

| # | Page | Date | Evidence Source | Description |
|---|------|------|-----------------|-------------|
| 1 | 3 | 09/03/2012 | Email M.C. | Y.C. |
|   |   | 09/05/2012 | Email M.C. – Decker | InfoTech Assignment |
|   |   | 09/06/2012 | Decker – M.C. | Intro to Information Tech Assignment |
| 2 | 4 | 09/10/2012 | Pinnacle | Grade F |
|   |   | 09/10/2012 | Email M.C. - Decker | Tech Class Assignment |
|   |   | 09/11/2012 | Email M.C. Decker | Tech Class Assignment |
|   |   | 09/12/2012 | Email M.C. – O'Bryan | Assignment |
| 3 | 3 | 10/15/2012 | Email M.C. – Decker | Information Tech Class |
|   |   | 10/15/2012 | Email Decker – M.C. | Information Tech Class |
|   |   | 10/24/2012 | Pinnacle | No grades Sept in October |
| 4 | 7 | 10/29/2012 | Pinnacle | F |
|   |   | 10/30/2012 | Email M.C. – O'Bryan | Clarification Assignment |
|   |   | 10/31/2012 | Pinnacle | F |
|   |   | 10/31/2012 | Pinnacle | Grade |
|   |   | 11/01/2012 | Email | Assignment Clarification |
|   |   | 11/01/2012 |  | Assignment Clarification |
|   |   | 11/04/2012 | Email | Update for Meeting |
| 5 | 4 | 11/20/2012 | Email M.C. - Marcus | 2 Assignments 0 |
|   |   | 11/21/2012 | Email M.C. – O'Bryan | Y.C. Assignment |
|   |   | 11/21/2012 | Email O'Bryan – M.C. | Assignment |
|   |   | 11/26/2012 | Email | Assignment |
| 6 | 3 | 12/13/2012 | Pinnacle |  |

*59*

| | | 12/13/2012 | Email M.C. - O'Bryan | Absence |
| | | 12/21/2012 | Pinnacle | Grade no grade Nov 22 |

### 139. Mr. Charles Elicker American Government (10/09/2012 – 10/10/2012)

| # | Page | Date | Evidence Source | Description |
|---|------|------|-----------------|-------------|
| 1 | | 10/09/2012 | Pinnacle | |
| 2 | | 10/09/2012 | Pinnacle | Grade F |
| 3 | | 10/09/2012 | Email M.C. - Elicker | Y.C. Accommodations |
| 4 | | 10/10/2012 | Email Elicker - M.C. | Accommodations |

### 140. Mr. Bart Graf Algebra Teacher (10/12/2012 – 11/29/2012)

| # | Page | Date | Evidence Source | Description |
|---|------|------|-----------------|-------------|
| 1 | 6 | 10/12/2012 | Pinnacle Email | Homework Assignments |
| | | 10/15/2012 | Pinnacle Email | Homework Assignments |
| | | 10/09/2012 | Pinnacle Email | Update |
| | | 11/08/2012 | Pinnacle Email | There was updated information on Pinnacle from October 29 – November 8th |
| 2 | | 11/19/2012 | Pinnacle Email | Y.C.'s Progress |
| | | 11/26/2012 | Pinnacle Email | Y.C. Progress |
| | | 11/27/2012 | Pinnacle Email | Rochelle Marcus |
| 3 | | 11/29/2012 | Email | |

### School Beginning August 2012, Y.C.'s Senior Year with the new 7 classes Year Schedule

141. This was by far the hardest school year for Y.C. because with so little time in class and now instead of only having homework assignments and class work for only four classes at a time, now he had 7 classes to worry about for homework assignments and class work.  Y.C. now cannot have enough time in class to finish his assignments and then to have homework

60

assignments from school for 7 classes.

## Altering Y.C.'s Tests in Virtual Counselor

142.  Flanagan altered student tests in violation of  paragraphs 6B -1.006(3)(f), (4)(b), (5)(a), F.A.C. on virtual counselor approximately 21 times while each time was copied 21 times on file from the virtual counselor website.  This began in December 11, 2011 and ended on August 9, 2012. We have evidence to prove this in court.

## Vocational Rehabilitation – Transition Services is a Part of the IEP

143. On **October 10, 2012** Vocational Rehabilitation gave Y.C. an application for Vocational Rehabilitation services.  We learned that if he qualified he would receive skill training/education, tuition, books/supplies, transportation, psychotherapy, and medical treatment. All services must be related to job goal.  We filled out the application and sent it in personally to Vocational Rehabilitation on **September 21, 2012.**  Y.C. completed a psychological evaluation for the Broward Psychological Association on **November 2, 2012**.  Then on **November 09, 2013** we sent our 1040 income tax documents because we were applying for the vocational rehabilitation services.

144. Later on **November 20, 2012** Mrs. Julie Emerson, the vocational counselor, called us and informed us that Y.C. did not qualify for vocational rehabilitation.  That he was grade level and that she didn't see any learning impediment. She had a psychological report from Kurt Wasser and the IEP and that she did he took language therapy in the school.

145. Then on **November 21, 2012**, a day before thanksgiving, we personally sent all the private evaluations that we had which included Nova Southeastern University Evaluation by Supervisor Ralph E. Cash, Language Evaluation from Flanagan High School by Sherry Wilson, IEP, Vocational Rehabilitation Evaluation and the Psychological Evaluation by Dr. Marvin Silverman.

146. In **December 18ᵗʰ, 2012** I called Vocational Rehabilitation so that they could give me the psychological evaluation that the Broward Psychological Associates, Inc.  This was completed by Cheryl Gotthelf, Ph.D. and the Vocational Rehabilitation Unit 515 22B received on they had done on **November 8, 2012**. (**Scan Document Here**).

## Recommendation from the BPA

147. In this psychological evaluation from the BPA, there were two recommendations that stuck out to me.

   c.  A developmental eye exam in order to rule out  visual problems
   d.  To continue speech therapy in order to improve vocabulary and expressive language skills.

61